[S. F. No. 10518.  In Bank.—May 2, 1925.]

In the Matter of the Estate of MATILDA BROWN, Deceased. MATILDA E. BROWN et al., Appellants, v. RAY L. RILEY, State Controller, et al., Respondents.

[1] INHERITANCE TAX—CONSTRUCTION OF ACTS OF 1917 AND 1921—MODIFICATION OR REVERSAL OF ORDER FIXING TAX—REFUND.—The purpose of subdivision 3 of section 11 of the Inheritance Tax Acts of 1917 and 1921 (Stats. 1917, p. 891; Stats. 1921, p. 1511) is to provide for a modification or reversal of the original order fixing an inheritance tax by the superior court ₀or on appeal and to require a refund, when so modified or reversed, by the county treasurer on an order of the superior court.

[2] ID.—REMEDIES.—The party complaining under subdivision 3 of section 11 of the Inheritance Tax Acts of 1917 and 1921 has alternative remedies, to wit: He may take an appeal from the original order in the manner and within the time prescribed by the Code of Civil Procedure (part II, title XIII, c. 1, secs. 939–959), without applying to the superior court for a modification or reversal of the original order, or he may apply to the superior court for a modification or reversal thereof without taking an appeal, the court having continuing jurisdiction for two years after the making of the original order within which, either on its own motion or on the application of the complaining party, to modify or reverse it.

[3] ID.—REFUND—TIME.—An application for an order of refund of an excess payment of inheritance tax, directed to the county treasurer, must be made to the superior court within one year after the original order has been modified or reversed, unless an appeal is taken from such modified or reversed order, in which event the application for the order of refund must be made within one year after the determination of the appeal.

[4] ID.—COURT ORDER.—It was not intended by subdivision 3 of section 11 of the Inheritance Tax Acts of 1917 and 1921 that the county treasurer should make a repayment of an excess payment of inheritance tax without a judicial order.

[5] ID.—SUBDIVISION 4, SECTION 11, ACTS OF 1917 AND 1921.—Subdivision 4 of section 11 of the Inheritance Tax Acts of 1917 and 1921 is concerned solely with the *repayment* of amounts of tax "erroneously paid" in all cases where an adjudication is not necessary to determine the amount excessively paid, while subdivision 3 *requires* an adjudication that the order fixing the tax was excessive in amount and then prescribes an exclusive mode for the recovery thereof.

[6] ID.—PROCEDURE.—Where an attack is made on the original order fixing an inheritance tax the complaining party *must* pursue either of the two alternative remedies specified in subdivision 3 of section 11 of the Inheritance Tax Acts of 1917 and 1921 for the modification or reversal thereof within the time prescribed for either remedy; but where the order fixing the tax is not questioned, and it is merely sought to recover an amount erroneously paid arising from an error or inadvertence in paying under the original order fixing the tax, the remedy is found in subdivision 4 of section 11 of said acts.

[7] ID.—CONSTRUCTION OF SUBDIVISIONS 3 AND 4, SECTION 11, ACTS OF 1917 AND 1921—ELECTION OF REMEDIES.—It was not the intention of the legislature to give a complaining party an election of remedies where the amount of the original order fixing an inheritance tax is alleged to be erroneous—the election of proceeding either under subdivision 3 or subdivision 4, subdivision 3 providing for a modification or reversal of the *order* by the superior court or on appeal, while subdivision 4 does not provide for an adjudication of the amount of the order.

[8] ID.—APPLICATION FOR REFUND—CONSTRUCTION OF.—An application for refund of an alleged excess of inheritance tax paid, which alleges, in substance, that the inheritance tax report, the order fixing said inheritance tax, and each of them, is erroneous and illegal and the payment of the taxes as alleged was erroneously and illegally exacted, and praying for an order requiring the county treasurer to refund and repay the same to each of the petitioners, and for such other relief as to the court may seem proper in the premises, is sufficient to constitute an attack on the validity of the original order calling for an adjudication of the amount of tax fixed therein, rather than an application for refund of the amount "erroneously paid," thus bringing the case exclusively within subdivision 3, instead of subdivision 4, section 11, of the Inheritance Tax Acts of 1917 and 1921.

[9] ID.—PLEADING—FORM OF RELIEF.—It is not essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts stated show some right of recovery, and a party cannot be thrown out of court merely because he may have misconceived the form of relief to which he is entitled.

[10] ID.—MODIFICATION OF ORDER—TIME—APPEAL.—As the jurisdiction of the superior court is suspended by filing a notice of appeal from an order fixing an inheritance tax during the two-year period mentioned in subdivision 3 of section 11 of the Inheritance Tax Acts of 1917 and 1921, the time of the pendency of the appeal is not counted in determining the time under said subdivision within which a modified order may be made.

9. See 1 Cal. Jur. 312.

[11] ID.—SEPARATE TRANSFERS OF PROPERTY—CALCULATION OF TAX—
EXEMPTIONS.—Transfers of property made by one since deceased
which are separate, distinct, and completed transactions should be
treated as independent transfers in determining the inheritance tax,
and each is entitled to the exemption fixed by the statute in force
when it was made, and is taxable at the rate prescribed therein.

[12] ID.—AMENDMENT OF 1917—JOINING OF TRANSFERS.—The amend-
ment of 1917 to the Inheritance Tax Act permits a joining of
independent vested transfers for the purpose of fixing the tax only
where all of such transfers were made after it became effective,
and the rate of taxation on transfers cannot be increased by a
statute passed subsequent to such transfers.

(1) 37 Cyc., p. 1584, n. 96.    (2) 37 Cyc., p. 1584, n. 96.    (3) 37
Cyc., p. 1585, n. 98.    (4) 37 Cyc., p. 1584, n. 96.    (5) 37 Cyc.,
p. 1584, n. 96.    (6) 37 Cyc., p. 1584, n. 96.    (7) 37 Cyc., p. 1584,
n. 96.    (8) 37 Cyc., p. 1584, n. 96.    (9) 31 Cyc., p. 111, n. 99.
(10) 37 Cyc., p. 1585, n. 98.    (11) 37 Cyc., p. 1570, n. 77.    (12) 37
Cyc., p. 1570, n. 77.

APPEAL from a judgment denying an application for
a refund of inheritance taxes.  E. C. Robinson, Judge.
Reversed.

The facts are stated in the opinion of the court.

Delger Trowbridge for Appellants.

H. C. Lucas, W. H. H. Gentry, Dion R. Holm, Ralph
W. Smith and Wesley E. Marten for Respondents.

LAWLOR, J.—The appellants herein have taken an ap-
peal from a judgment based on an order sustaining the de-
murrer of respondents without leave to amend.   Appellants
filed a petition in the superior court for a refund of a por-
tion of an inheritance tax paid by the estate of Matilda
Brown, deceased, also known as Mathilda Brown and as
Mathilda A. Brown.   On June 1, 1909, the deceased made a
deed of gift of an undivided one-fourth interest in two pieces
of property, the Broadway property and the Fourteenth
Street property in the city of Oakland, county of Alameda,

11.   See 24 Cal. Jur. 462.
12.   See 24 Cal. Jur. 442.

to her children, Mathilda E. Brown, Annie F. Brown, David E. Brown, Everett J. Brown, and Elsie G. Hardin, the appellants herein, reserving in herself a life estate in these properties. On March 15, 1910, she executed another deed of gift to the same children, which deed of gift conveyed to them an additional one-twelfth interest in both pieces of property, again reserving a life estate in herself. Immediately afterward the children conveyed back to decedent an undivided one-third interest in the Fourteenth Street property. This left them with an undivided one-third remainder interest in the Broadway property. On April 16, 1920, decedent died intestate, leaving as her estate the one-third interest in the Fourteenth Street property, and certain other property, both real and personal. The inheritance tax appraiser, in fixing the tax on this estate, found that on June 1, 1909, and March 15, 1910, decedent deeded to her children an undivided one-third interest in the Broadway property, with the intent that these transfers should not take effect in possession or enjoyment until her death. The two transfers of June 1, 1909, and March 15, 1910, and the transfer of all the property in her estate by intestacy were treated as one transfer, and only one exemption to each of the five children, appellants herein, was allowed on the two transfers *inter vivos* and the transfer by succession. The following shows the method of computation:

"Matilda E. Brown (adult daughter)

| | | | |
|---|---|---|---|
| ⅕ property deeded. | $66,666.66 | $ 4,000.00 Exempt | |
| | | 21,000.00 at 1% | $210.00 |
| | | 25,000.00 at 1½% | 375.00 |
| | | 16,666.66 at 2% | 333.33 |
| | | 66,666.66 | 918.33 |
| ⅕ estate .......... | 9,842.77 | 9,842.77 at 4% | 393.71 |
| | | | $1,312.04 |

Less 1% additional
$6,000 Exemption
under 1905 [should
be 1917] Act                                          60.00

                                                  $1,252.04"

The inheritance tax was formally fixed by the inheritance tax appraiser and his report was duly made and filed on April 13, 1921. Notice was given by posting and mailing in the manner required by law, and thereafter, on April 22, 1921, the order of the court was made approving the report of the inheritance tax appraiser as filed. It is claimed by appellants that the order of the court approving the report was inadvertently made nine days after the posting and mailing of notice instead of ten days thereafter as required by the statute, but they "make no point of that on this appeal."

On April 22, 1922, the application for a refund was made to the superior court. A demurrer thereto was interposed on May 12, 1922. On October 31, 1922, the application was amended in certain particulars and it was stipulated on November 13, 1922, that the said demurrer may stand as a demurrer to the amended application. The demurrer was sustained on each cause of action on November 21, 1922, with leave to amend within five days, to which the appellants noted an exception and declared in open court their refusal to amend; the court thereupon ordered the demurrer sustained without leave to amend. Judgment denying the application for refund was made on November 21, filed on November 22 and entered on November 27, 1922.

Appellants' notice of appeal was filed December 9, 1922.

The application was demurred to on the ground that where an inheritance tax is paid in pursuance of an order of the superior court having jurisdiction fixing such tax, the court has no jurisdiction of an application for refund of any part of said tax unless and until said order is modified or reversed by the superior court having jurisdiction, or on an appeal taken therefrom. This ground, it has been insisted by respondents, is determinative of the appeal.

Appellants' position is, "First, that all three of the transfers in this case should have been treated as three independent transfers, each of which should have been allowed separate exemptions and should have been taxed at the primary rates; and, secondly, that even if the proposition just stated is not true that, in any event, to tax the transfers of 1909 and 1910 as one transfer would result in an unconstitutional impairment of vested rights fully created in 1909 and 1910, so as to be beyond the reach of the amendment

of 1917.'' Thirdly, `` . . . that they were entitled to make this application under Section 11, Subdivision 4, of the Inheritance Tax Acts of 1917 and 1921 . . .'' as ``it is clear that this provision of the statute is applicable to this case, because subdivision 3 of Section 11 of the same acts gives relief to the heirs where the order fixing the inheritance tax is modified or reversed by the Superior Court or is modified or reversed on appeal. This being so, the following section (subdivision 4) must be applicable to a case where there has been no attempt made to have the order fixing the inheritance tax modified or reversed either by the trial court or on appeal.'' Or, as stated, `` . . . that subdivision 4 is intended to cover all cases where there is some error in the order fixing the inheritance tax pertaining to matters other than the subsequent or erroneous allowance of debts, which other matters have not been litigated in the Superior Court or on appeal; in other words that this subdivision allows a review of any erroneous order fixing a tax that was made without any objection or contest. . . . '' Their position, with regard to the necessity of having the order modified, is that `` . . . under subdivision 4 of section 11 of our act . . . it is absolutely unnecessary, because of the sweeping terms in which the right to relief is given, to modify the order before ordering a refund of money paid under it.''

After reiterating their contention that where an inheritance tax is paid in pursuance of an order of the superior court having jurisdiction, there can be no refund of said tax or of any portion thereof unless and until said order has been modified or reversed by the superior court having jurisdiction, or on an appeal taken therefrom, as provided in subdivision 3 of section 11, respondents proceed to set forth their interpretation of subdivision 4 of said section as follows: `` . . . It seems to us that the only reasonable interpretation of the act is to hold that subdivision 3 provides for a refund of money paid in pursuance of a judgment and subdivision 4 provides for a refund of any amount 'erroneously paid' and that no amount is 'erroneously paid' if paid in accordance with the judgment fixing the tax. . . . '' Respondents' construction of subdivision 4 is again set forth as follows: ``It seems to us that the only construction to be placed on said subdivision 4 to make it harmonize

with subdivision 3, is to hold that it refers to errors of the *taxpayer* and not to errors of the *court*. Correction of errors of the court is covered by subdivision 3. Errors of the party are covered by subdivision 4. Amounts 'erroneously paid' are amounts paid in excess of the amount fixed by the order. Instances of such payments were mentioned in our original brief herein. There may be others. These would be covered by said subdivision 4.''

Subdivisions 3 and 4 of section 11, as they respectively appear in the acts of 1917 and 1921 (Stats. 1917, p. 880, at p. 891; Stats. 1921, p. 1500, at p. 1511), read as follows:

''(3) If, after the payment of any tax in pursuance of an order fixing such tax, made by the superior court having jurisdiction, such order be modified or reversed by the superior court having jurisdiction within two years from and after the date of entry of the order fixing the tax, or be modified or reversed at any time on an appeal taken therefrom within the time allowed by law on due notice to the state controller, the county treasurer shall refund to the executor, administrator, trustee, person or persons by whom such tax was paid, the amount of any moneys paid or deposited on account of such tax in excess of the amount of tax fixed by the order modified or reversed, out of any inheritance tax moneys in his hands or custody, and credit himself with the same in the account required to be rendered by him to the controller on his semi-annual settlement; but no application for such refund shall be made after one year from such reversal or modification, unless an appeal shall be taken therefrom, in which case no such application shall be made after one year from the final determination on such appeal or of an appeal taken therefrom, and the representatives of the estate, legatees, devisees or distributees entitled to any refund under this section shall not be entitled to any interest upon such refund, and the state controller shall deduct from the fees allowed by this act to the county treasurer the amount theretofore allowed him upon such overpayment.''

''(4) When any amount of said tax shall have been erroneously paid, the superior court having jurisdiction, on application after notice to the state controller, and on satisfactory proof to it, shall by order require the county treasurer to refund and pay to the executor, administrator,

trustee, person or persons who had paid any such tax in error the amount of such tax so erroneously paid; *provided,* that all applications for such repayment of such tax so erroneously paid shall be made within one year of the date of the entry of the order fixing tax or of the decree of final distribution of the estate. Such refund shall be made by said treasurer out of any inheritance tax moneys in his hands or custody and he shall. credit himself with the same in the account required to be rendered by him to the controller on semi-annual settlement; and the state controller shall deduct from the fees allowed by this act to the county treasurer the amount theretofore allowed him upon such erroneous payment.''

[1] It is plain to us that the purpose of subdivision 3 is to provide for a modification or reversal of the original order by the superior court or on appeal and to require a refund, when so modified or reversed, by the county treasurer on an order of the superior court.

[2] The party complaining has under subdivision 3 an alternative remedy, one by appeal from the original order and the other by application to the superior court for a modification or reversal thereof. A party may take an appeal from the original order in the manner and within the time prescribed by the Code of Civil Procedure (part II, title XIII, c. 1, secs. 939–959), without applying to the superior court for a modification or reversal of the original order, or apply to the superior court for a modification or reversal thereof without taking an appeal; the court having continuing jurisdiction for two years after the making of the original order within which, either on its own motion or on the application of the complaining party, to modify or reverse it. With regard to the latter remedy, the subdivision does not provide, in terms, that a party complaining may apply to the superior court for a modification or reversal of the original order but, as that court is given power to modify or reverse within two years, it would follow that the party complaining would have the right to invoke its action. [3] But an application for an order of refund, directed to the county treasurer, must be made to the superior court within one year after the original order has been modified or reversed, unless an appeal is taken from such

modified or reversed order, in which event the application
for the order of refund must be made within one year after
the determination of the appeal. When such order of re-
fund is obtained within the period named, upon the pres-
entation thereof the county treasurer shall refund the
excessive amount. [4] It will be observed that the subdivi-
sion does not expressly provide that the application must be
made by the party aggrieved nor that an application for
an order of refund shall be made to the superior court but
it is not likely the legislature intended that the county
treasurer should make the repayment without a judicial
order. The requirement of such an order is expressly pro-
vided for in subdivision 4.

[5] Subdivision 4, on the other hand, is concerned solely
with the *repayment* of amounts of tax "erroneously paid"
in all cases where an adjudication is not necessary to deter-
mine the amount excessively paid. Subdivision 3, however,
as stated above, *requires* an adjudication that the order fix-
ing the tax was excessive in amount and then prescribes
an exclusive mode for the recovery thereof. In other words,
where the original order is modified or reversed the repay-
ment also is made under that subdivision—3; all other re-
payments are made under subdivision 4. But the remedy
prescribed in subdivision 4 is not predicated upon an adjudi-
cation that there has been an overpayment; it extends to
all those cases where no complaint is made of the original
order fixing the tax but due to some error or inadvertence
in giving effect to it a sum was "erroneously paid." Under
this subdivision application for an order, directed to the
county treasurer, for the repayment of the excessive amount
must be made to the court within one year of the date
of the entry of the original order fixing the tax or of the
decree of final distribution of the estate.

[6] From the foregoing discussion of these two subdivi-
sions their scope may be thus briefly summarized: Where
any attack is made on the original order fixing the tax the
complaining party *must* pursue either of the two alterna-
tive remedies specified in subdivision 3 for the modification
or reversal thereof within the time prescribed for either
remedy. But, where the order fixing the tax is not ques-
tioned, and it is merely sought to recover an amount "erro-
neously paid" arising from an error or inadvertence in

paying under the original order fixing tax, then the remedy is found in subdivision 4.

This subdivision (4) in the opening sentence refers to "said tax" and it has been suggested that this term connotes the excessive tax mentioned in subdivision 3. In view of the variant statutes of limitations the phrase is not susceptible of such a construction. Moreover, the "said tax" would more consistently refer to the inheritance tax in general as provided for in section 2 of the act.

In view of the language of the subdivisions 3 and 4 we are unable to accept the reasoning of the appellants that it is not necessary to have the original order alleged to be erroneous modified or reversed in order to effect a refund—that is to say, recourse may be had to subdivision 4 for a refund due to any error in the amount fixed in the original order without having the said order otherwise modified or reversed; that it is optional with the aggrieved party to ask for a refund of the amount "erroneously paid" either by applying for a modification or reversal of the order under subdivision 3 or by applying for the amount "erroneously paid" directly under subdivision 4.

If meaning is to be given to section 18 of the act (Stats. 1917, p. 900; Stats. 1921, p. 1520), which provides that an order fixing tax is to have the effect of a judgment in a civil action, it would follow that if any such order has fixed an erroneous amount it would have to be in some manner modified or reversed before a refund of any portion of the tax paid thereunder could be accomplished, for the order otherwise would have the effect of a final judgment in a civil action. Appellants have offered no suggestion as to what disposition would be made of the unmodified or unreversed order which has ripened into a final judgment. It is conceded by appellants that where the original order is to be modified or reversed it must be done under subdivision 3, contending, however, that " . . . under subdivision 4 of section 11 of our act . . . it is absolutely unnecessary, because of the sweeping terms in which the right to relief is given, to modify the order before ordering a refund of money paid under it." Subdivision 4 does not provide for an adjudication of the *amount* of the tax fixed in the original order in any case; and to allow a refund thereunder where

it is claimed the order fixed an erroneous amount would, in effect, be a modification or reversal of such order—a function assigned in plain terms to subdivision 3. Subdivision 4, as already stated, looks solely to the repayment of amounts "erroneously paid" under a valid order, but the order itself is not open to attack on the ground it fixed an erroneous amount. It should be kept in mind that subdivision 4 repeatedly refers to *amounts* "erroneously paid"—thus indicating an *amount* was "erroneously paid" and not that the *determination of the amount* was erroneous.

[7] Nor do we think the legislature intended to give a complaining party an election of remedies where the amount of the original order fixing tax is alleged to be erroneous—the election of proceeding either under subdivision 3 or subdivision 4. If that had been the intention of the legislature each subdivision would have fixed an identical statutory limit within which application should be made to the court for the order on the county treasurer directing the "refund" provided for in subdivision 3 or the repayment of the amount "erroneously paid" in subdivision 4. On the contrary, as we have shown, the time within which the application must be made is not the same in each subdivision.

There is no merit in the contention that subdivision 4 is one of those exceptions contemplated by the phrase "except as otherwise herein provided" in section 18 of the act and that therefore it provides a mode of review of the original order without a modification or reversal thereof or appeal therefrom. As we have shown, subdivision 4 applies only to those cases where the order fixing the amount of the tax is not questioned. Subdivision 3 provides for a modification or reversal of the *order* by the superior court or on appeal, while subdivision 4 does not, as already indicated, provide for an adjudication of the amount of the order. It follows that as the respective subdivisions cover different situations they cannot be held to provide alternative remedies.

Appellants have cited authority to the effect that it is not necessary to take an appeal from the original order to secure a refund, but that this may be accomplished by an alternative remedy. It is true, as we have shown, that under our statute where the refund is sought on the ground

that the order fixing tax has prescribed an excessive amount
the party need not appeal therefrom but may obtain the
refund by having the original order modified or reversed
by the superior court. But this alternative remedy, as we
have said, is peculiar to subdivision 3 and is in no way con-
templated by subdivision 4.

As stated, appellants have claimed and now claim they
are entitled to a refund under subdivision 4 without secur-
ing a modification or reversal of the original order under
subdivision 3. It was upon this question that the demurrer
was sustained. But, it is apparent from the foregoing in-
terpretations of the respective subdivisions that if appellants
are entitled to relief it is *not* under subdivision 4; such re-
lief, if at all, can only be granted under subdivision 3.

It was suggested by the court during the oral argument
whether if the facts set up in the application for refund
were sufficient it might be considered as an application under
subdivision 3 for modification or reversal by the superior
court of the original order fixing the tax rather than an
application for relief under subdivision 4.

The brief of appellants filed after oral argument contains
the following statement: "On leaving this subject of modifi-
cation it may be well to say that we concur with respondents'
argument . . . that we cannot now move to modify the origi-
nal order because of the passage of the two year period
mentioned in subdivision 3 of section 11, although we deny
there is any necessity under subdivision 4 for modifying the
original order. . . . "

[8] Following the conventional allegations the applica-
tion alleges that "said inheritance tax report, the order fix-
ing said inheritance tax report, and each of them was and is
erroneous and illegal, and the payment of said inheri-
tance taxes as alleged . . . was erroneously and illegally
exacted. . . .

"That as a result of said erroneous and illegal inheritance
tax report and decree fixing said inheritance tax as afore-
said your petitioners . . . were erroneously and illegally
compelled to pay inheritance taxes as aforesaid. . . .

"Wherefore, said petitioners . . . pray for an order of
said court requiring said County Treasurer to refund and
repay to each of said petitioners . . . , *and for such other*

*relief as to the court may seem proper in the premises.*"
(Italics ours.)

We think the application is sufficient to constitute an attack on the validity of the original order calling for an *adjudication* of the amount of tax fixed therein, rather than an application for refund of an amount "erroneously paid," thus bringing the case exclusively within subdivision 3 instead of subdivision 4. The demurrer went to this point.

This being so, should not the application be determined under subdivision 3?

[9] We quote with approval what was held in *Zellner* v. *Wassman*, 184 Cal. 80, 88 [193 Pac. 84, 87] : "It is not essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts stated show some right of recovery, and a party cannot be thrown out of court merely because he may have misconceived the form of relief to which he is entitled. . . . "

[10] Respondents' position is thus stated:

"If we grant that the petition states facts sufficient to warrant relief under said subdivision 3, we are confronted with the fact that said petition also shows that the tax, as fixed, has been paid. Therefore, in order to entitle appellants to a refund, the order must be modified '*within two years.*' It is not enough that the petition be filed or the motion made within two years, but the order of modification must under the wording of said subdivision 3 be made *within two years*. The two years have elapsed and the order has not been made. We take it, that even if this court should hold that the superior court should have overruled the demurrer and modified the order fixing the tax, in spite of the fact that appellants did not ask it to do so, that the judgment of the superior court will not now be reversed when it appears that appellants are not now entitled to said modification, the two years having elapsed, and that the superior court would not now have the right to make such a modification."

In the face of the record facts the contention of respondents cannot be maintained. It has been shown that the original order was made on April 22, 1921. The application for refund was filed April 22, 1922. The demurrer was interposed on May 12, 1922, and sustained November 21,

1922, and the notice of appeal from said order and the judgment based thereon was filed December 9, 1922, less than twenty months after the original order was made. In view of the fact that the jurisdiction of the superior court was suspended by the filing of the notice of appeal during the two year period mentioned in subdivision 3, it is not necessary to decide whether the running of the statute would date from the filing of the application or from the taking of the appeal.

Having concluded that the application of appellants may be determined under subdivision 3, we are brought to consider whether the original order fixed an erroneous amount of tax.

We have already stated the contention of appellants that the method of computation employed by the inheritance tax appraiser in the instant case is illegal and erroneous, as being contrary to the holding in the second decision in *Estate of Potter*, 188 Cal. 55 [204 Pac. 826], handed down after the filing of the appraiser's report herein. That case involved the question of the rates of computation of inheritance tax upon the valuation of property given at the death of decedent and that given prior to her death, respectively. In the first decision the court held that the rates in force at the time of the transfer are controlling but that as a transfer made in contemplation of death is only taxable in aid of a succession tax the legislature has power to consider, in fixing the rate of taxation upon the property passing at the time of death, all property which has theretofore passed to the legatee by gift in contemplation of death, and the fact that it has no power to increase the amount of tax upon the property already vested in the legatee in no way bears upon the power to consider that element in fixing the tax to be paid by the legatee for property transferred at death. In the decision upon rehearing the order was reversed, the court holding that the value of the parcel of property transferred by the gift and the value of the parcel transferred at death cannot be combined for the purpose of ascertaining the rate chargeable upon the property left to the child at the death of the parent, but the rate is to be calculated and the exemption allowed solely upon the value of the property vesting in the child at such time, without add-

ing the value of the previous gift. It is to be noted that the act of 1917, in which transfers made before and after the taking effect of that act are to be combined in one taxable entity, was not involved in the *Estate of Potter, supra,* for the reason that it was not in force in 1916, the date of the death of the parent. Respondents point out there is "nothing in the final opinion in said matter [*Estate of Potter*] inconsistent with the order of the court fixing the tax in the instant case, under the changed facts, Mrs. Brown having died after the taking effect of the 1917 act." The final majority decision declares, concerning the 1917 act: "Likewise, it is clear that the language does not indicate an intent to declare that for the purpose of taxing the property received at the death of Mrs. Potter in 1916 it shall be raised into the class above $500,000 in value in order to tax it at twelve per cent on the whole thereof. The only statute which purports to authorize such a combination of values for computing the tax is the act of 1917 (Stats. 1917, sec. 880). Section 2 of that act declares that when, 'either before or after the passage of this act,' more than one transfer has been made by a decedent to one person, the tax shall be imposed upon the aggregate market value of all such transfers as if the property had passed by one transfer. (Subd. 9.) This act cannot be given a retroactive effect upon transfers vested in 1916, so as to increase the tax thereon. Any attempt to do so would, of course, be void."

[11] In *Estate of Potter, supra,* each of the transfers involved was governed by a different act and the court was concerned primarily with the question of whether or not the amendment of the 1917 act was retroactive, so as to allow a combining or lumping of an antecedent transfer with one occurring at the death of the grantor for the purpose of determining the tax on the transfer resulting from the death of the grantor—that is to say, considering both transfers as a single taxable entity with one exemption. Nevertheless, the court expressed the view that in so far as transfers of property were amenable to an inheritance tax, each was to be treated as a separate and distinct transaction, the taxpayer being entitled to a separate exemption on each transfer and subject to the primary rate prescribed by the act in force at the time such transfer was made. This view is not, expressly or impliedly, restricted to trans-

fers occurring under different acts, but is broad enough to extend to all transfers whether governed by the same or different acts, there being no provision for the joining of the several transfers into one taxable entity. It follows that the inheritance tax appraiser in computing the tax in the instant case had erroneously joined the transfers of 1909 and 1910 into a single transfer and allowed but a single exemption. Each of said transfers being a separate, distinct, and completed transaction should have been treated in line with the reasoning of *Estate of Potter, supra,* as an independent transfer entitled to the exemption fixed by the statute in force when it was made and taxable at the rate prescribed therein—this, in view of the fact that both of such transfers are governed by the same Inheritance Tax Act of 1905 (Stats. 1905, p. 341).

Now, with regard to the transfer which vested on the death of the decedent in 1920 after the amendment of 1917, which provided for the first time for a joining of several independent transfers: By adding the amount of the transfers of 1909 and 1910 to that of 1920 a total of over $75,000 to each heir was arrived at, thereby fixing a higher rate on the last transfer.

[12] In our opinion the amendment of 1917 permits a joining of independent vested transfers only where all of such transfers were made after it became effective. We have seen that the rate of taxation on the transfers of 1909 and 1910 cannot be increased by a statute passed subsequent to such transfers. To hold that those transfers could be joined to that of 1920 for the purpose of determining the rate on the latter would in effect be to impute to the legislature an intention to do indirectly what could not be done directly. The illustration was given in *Estate of Potter, supra,* that where a decedent having two children made a gift to one of them in advance of death, dividing at death the remainder of his estate equally between them, the tax imposed on the one receiving the gift would approximately be three times as large as that on the other. The opinion continues: "This would seem to put the legislature in the position of attempting to do indirectly what it could not do directly; that is, to increase the burden of his tax on his share of the estate and discriminate between him and his brother in that respect, solely upon the ground that he

196 Cal.—9

had received a prior gift taxed at a lower rate, which the state was unable to increase by the subsequent statute. A construction imputing to the state a design so indicative of resentment or regret should not be adopted. Such meaning, if intended by the legislature, should be clearly expressed in the statute.''

Respondents point out that in *Estate of Potter, supra,* the respective transfers were made under different acts and that had they been made under one act as the transfers of 1909 and 1910 in this case the court would have been disposed to allow them to be joined. In support thereof they quote as follows: ''A comparison of the respective sections of the acts of 1905 and 1913 on this subject shows that while each act provides for an appraisement of all property subject to tax, including that passing by a prior gift as well as that passing at death, *and perhaps the imposition of the tax on the whole thereof passing to the same person* at the tax rates fixed by the respective acts, the language in which these provisions are expressed is not by any means the same in the two cases.'' If it be conceded that the language we have italicized was intended as a qualification of the rule laid down, it would be *obiter dicta* for the reason that *Estate of Potter, supra,* did not involve two transfers under the same act; and, moreover, it would be opposed to the holding that *no transfer* can be joined to another to increase the rate on either unless a statute is in existence at the time each transfer is made authorizing such a joinder.

The question of prior transfers made under the same act was not, of course, involved in *Estate of Potter, supra,* and hence the decision contains no definite statement that the rule would be the same as when prior transfers come under different acts; but, nevertheless, the decision indicates that the holding would have been no different if the transfers had been made under the same act. We think no other conclusion could have been adopted.

And as the transfers of 1909 and 1910 may not be joined in determining the tax thereon, notwithstanding the 1920 transfer was subsequent to the amendment of 1917 providing for joining transfers, those of 1909 and 1910 cannot be availed of to increase the rate on the later transfer because that would be doing indirectly what could not be done directly.

Finally, as each of the three transfers herein involved must be treated as a separate and independent transfer taxable at the rate fixed by the act in force when each was made, allowing the exemptions provided for in each act, the order and decree appealed from are reversed, with directions to the superior court to overrule the demurrer and take such further proceedings as are in accordance with the views herein expressed.

Richards, J., Shenk, J., Waste, J., Lennon, J., and Seawell, J., concurred.

Rehearing denied.

All the Justices concurred.