[Civ. No. 7105. Third Dist. Jan. 2, 1945.]

RALPH W. EVANS, as Building and Loan Commissioner, etc., Respondent, v. COUNTY OF SAN JOAQUIN et al., Appellants.

Chester E. Watson, District Attorney, and Robert N. Blewett, Assistant District Attorney, for Appellants.

Charles H. McDonald for Respondent.

ADAMS, P. J.—On November 29, 1929, the Pacific States Savings and Loan Company (hereinafter referred to as Pacific States) became the holder of a deed of trust executed by the legal owner of a certain parcel of property in San Joaquin County. Thereafter, on or about August 5, 1935, this property was conveyed by its owner to Charles C. and Nettie Roe, subject to the lien of the deed of trust. The Roes failed to pay the general property taxes assessed against and levied upon it for the fiscal year 1935-36, and on or about the 24th day of June, 1936, it was sold to the State of California, pursuant to the provisions of the Political Code. At the time Charles C. and Nettie Roe took title to the parcel involved in this action, they were the owners of an adjoining parcel, and the two parcels were assessed as one by the county of San Joaquin for the purpose of levying general property taxes thereon for the fiscal years 1937-38 and 1938-39. Located upon this adjoining parcel was certain personal property owned by Charles C. Roe, which personal property was also assessed by the county of San Joaquin for the years 1937-38 and 1938-39, and a lien for the payment of taxes thereon was impressed by the county upon both parcels of real property. The Roes meanwhile had defaulted in their payments under the deed of trust and the trustees named therein, on December 28, 1938, executed a trustees' deed of said property to Pacific States. Thereafter the Building and Loan Commissioner took possession of the assets of Pacific States and on March 28, 1940, applied to the auditor of the county of San Joaquin for an estimate of the amount necessary to be

paid in order to redeem the said real property from the sale thereof to the State of California, in accordance with the provisions of section 3817 of the Political Code. Defendants contended that in order to redeem, it was necessary for plaintiff to pay the sum of $721.77, which sum included $545.77 which was the amount of the tax on Roe's personal property, with interest and penalties, for years subsequent to the sale to the state. Plaintiff contended that the only amount which it should be compelled to pay was the tax upon the real property in controversy. The auditor refused to furnish an estimate excluding the personal property taxes, and refused to allow a redemption of the real property without payment by plaintiff of the whole sum of $721.77. Plaintiff then paid the said sum under written protest and thereafter presented to the board of supervisors of the county a claim for refund of $545.77. This claim was denied, whereupon plaintiff brought this action. A demurrer to his complaint was sustained without leave to amend, and from the judgment for defendants which followed plaintiff appealed. This court reversed said judgment (*Evans* v. *County of San Joaquin,* 58 Cal. App.2d 799 [138 P.2d 805]), holding that plaintiff's claim for a refund should have been allowed, and that the trial court erred in sustaining defendants' demurrer to plaintiff's complaint.

Thereafter defendants filed an answer to plaintiff's complaint, the cause was submitted to the trial court on an agreed statement of facts substantially as above set forth, and judgment for plaintiff followed. From that judgment defendants have appealed, contending that notwithstanding the prior decision of this court, plaintiff is not entitled to recover because the taxes which he paid on the personal property were valid taxes that were ''legally and morally'' due and owing to the county, that to refund them to plaintiff would result in an unjust enrichment of plaintiff at the expense of the county, and that under section 5096 of the Revenue and Taxation Code (formerly Pol. Code, § 3804), refunds are allowable only when they have been illegally assessed or where, through error, they are paid more than once, and that what is paid on redemption of property is not the subject of a refund unless the taxpayer can show that the taxes were ''erroneous or illegal.''

Section 5096, *supra,* provides that ''On order of the board of supervisors, any taxes paid before or after delin-

quency *shall* be refunded if they were: . . . (b) Erroneously or illegally collected." (Italics added.) This section does not require that in order to justify recovery of taxes for which a refund is sought, such taxes must be "erroneous or illegal taxes." Refund is to be made where taxes have been "erroneously or illegally collected."

In our previous decision in this case we held that the county could not legally exact from plaintiff payment of the taxes assessed against the personal property of the Roes, as a condition precedent to allowance of his right of redemption. Therefore, when the county auditor refused to furnish plaintiff with a correct estimate of the amount necessary to be paid by him, and exacted payment of the personal property taxes and penalties, plaintiff was denied a right given him by law, and the county erroneously and illegally collected from him taxes which, on the filing of a claim therefor, he was entitled to have refunded by the board of supervisors.

As for appellants' argument that plaintiff should not be permitted to recover because the personal property taxes were legally and morally due to the county, they may have been legally and morally due to the county from Roe, to whom the personal property belonged; but the mere fact that the county impressed a lien upon both parcels of real property for the taxes due on the personal property did not make the debt plaintiff's debt, and imposed neither a legal nor a moral obligation upon plaintiff to pay the debt of the Roes. As for the argument that plaintiff will be unduly enriched at the expense of the county, the county still has a lien upon the one piece of real property as security for the personal property taxes and presumably can rely thereon for collection of such taxes.

Appellants cite four cases in support of their argument, to wit: *Carton* v. *Board of Commissioners,* 10 Wyo. 416 [69 P. 1013]; *Steele* v. *County of San Luis Obispo,* 152 Cal. 785 [93 P. 1020]; *First Trust & Savings Bank of Pasadena* v. *County of Los Angeles,* 206 Cal. 240 [273 P. 1066]; and *H. & W. Pierce, Inc.* v. *County of Santa Barbara,* 40 Cal.App. 302 [180 P. 641]. But in all of those cases the taxes which plaintiffs sought to have refunded were taxes imposed upon their own property, which they, therefore, had a moral obligation to pay; and recoveries were sought upon mere tech-

nical defects which were claimed to render the assessments void. Relief was denied upon the grounds that to permit plaintiffs to recover would permit them to avoid their just share of the public burden, and that, under the rule that he who seeks equity must do equity, one who refuses to pay a tax morally due from him cannot have the aid of a court of equity in avoiding such just debt on merely technical grounds. (*Couts* v. *Cornell*, 147 Cal. 560 [82 P. 194, 109 Am.St. Rep. 168].)

Plaintiff regularly pursued the course provided by section 5096, *supra*, and related sections, and since we held in our former decision that the amount which he sought to have repaid to him had been erroneously and illegally collected, it was the duty of the board of supervisors to allow his claim and order refunded the amount represented by the taxes on Roe's personal property and the penalties and interest thereon. (*Stewart Law etc. Co.* v. *County of Alameda*, 142 Cal. 660 [76 P. 481], cited in *Easton* v. *County of Alameda*, 9 Cal.2d 301, 303 [70 P.2d 640] ; *Pacific Coast Co.* v. *Wells*, 134 Cal. 471 [66 P. 657] ; *Slade* v. *County of Butte*, 14 Cal.App. 453 [112 P. 485] ; *Palomares Land Co.* v. *County of Los Angeles*, 146 Cal. 530, 536-537 [80 P. 931].)

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 1, 1945.