[Civ. No. 764.   Fifth Dist.   July 5, 1967.]

SIERRA INVESTMENT CORPORATION, Plaintiff and Appellant, v. COUNTY OF SACRAMENTO et al., Defendants and Respondents.

Benjamin D. Frantz for Plaintiff and Appellant.

John B. Heinrich, County Counsel, for Defendants and Respondents.

GARGANO, J.—Appellant corporation instituted this action against the respondents in the Superior Court of Sacramento County to recover the county taxes it allegedly paid by mistake on a parcel of real property which it did not own. The respondents filed general and special demurrers to appellant's first amended complaint which were sustained by the trial court with leave to amend. Appellant, however, elected to rest on its complaint; and after it failed to amend, respondents' motion for dismissal of the complaint was granted by the trial court. Appellant appeals from the judgment of dismissal.

Since appellant has elected not to amend its complaint, a strict construction of the pleadings is required. In fact, for the purpose of this appeal at least, we must assume that it pleaded as strong a case as it can (*Vaughn v. Certified Life Ins. Co.*, 238 Cal.App.2d 177 [47 Cal.Rptr. 619]). Accordingly, at the very best the facts are essentially as follows: Through no mistake or fault on the part of the respondents, appellant acquired a tax bill covering a parcel of real property which it did not own.[1] The tax bill accurately described the property assessed by numerical code referring to a map in the assessor's office, correctly named the assessee, and apparently was correct in every other detail.[2] Appellant, however, under the mistaken belief that it owned the property designated in the tax bill, paid both installments of taxes as they became due. The first installment was paid on or about November 28, 1962, and the second installment was paid on or about April 10, 1963. Approximately three years later appel-

---

[1] Appellant's complaint simply alleges that it was delivered a tax bill. Respondents demurred on the ground that this allegation was uncertain and ambiguous because it could not be ascertained who delivered the tax bill. Since appellant did not amend the complaint we must assume that the tax bill was not delivered to the appellant by virtue of any mistake or error on the part of the County of Sacramento.

[2] Appellant did not allege that there was any mistake in the tax bill itself, and we must assume that it was correct in every detail.

lant petitioned the respondent board of supervisors pursuant to Revenue and Taxation Code section 5096, subdivision (b), to recover the taxes which it alleged were "erroneously collected" by respondent Sacramento County. The petition was denied by the board and this suit followed.

■ Under the "voluntary payment" doctrine followed in this and most other states, it is settled that taxes freely and voluntarily paid may not be recovered by a taxpayer in the absence of a statute permitting the refund thereof, and that this is so even if the taxes are illegally levied or collected (*Southern Service Co., Ltd.* v. *Los Angeles,* 15 Cal.2d 1 [97 P.2d 963]). Moreover, it is also settled that one who pays taxes under the mistaken belief that he owns the property against which the taxes are levied is a volunteerer, and that under these circumstances the taxes are freely and voluntarily paid.[3] As stated in *Bateson* v. *City of Detroit,* 143 Mich. 582 [106 N.W. 1104, 1105]: "It is apparent that the plaintiff, when he made the payments in question, had before him the description assessed, and could have determined by a comparison of the same with the description in his deed that such assessment covered more land than he or his wife owned. . . . The rule that a tax voluntarily paid cannot be recovered back, and that the taxpayer cannot aver a mistake of fact which results from his own neglect to consult the record, is too well settled to require extended citation of authorities." Thus, the only remaining question presented herein is whether Revenue and Taxation Code section 5096, subdivision (b), or any other section of that code or law of this state required the respondent Board of Supervisors of Sacramento County to refund the taxes which appellant paid under the facts alleged in its complaint.

Respondents contend that the only statutory authority which provides a remedy for a taxpayer who mistakenly pays taxes on the wrong parcel of real property (where the taxes are otherwise properly and legally levied and where no mistake has been made by the county in its billing process or otherwise) is that provided by sections 4911-4916 of the Revenue and Taxation Code. They further contend that this remedy is exclusive, and since appellant did not allege compliance

---

[3]The California Supreme Court in *McMillan* v. *O'Brien,* 219 Cal. 775 [29 P.2d 183], held that one who pays taxes under a mistaken belief in his own ownership is a volunteerer and that, by implication at least, under these circumstances the taxes are freely and voluntarily paid under the voluntary payment doctrine.

therewith, thereby exhausting the administrative remedy specified by the statute as a prerequisite to relief, it cannot now prevail in this appeal. Under these sections of the Revenue and Taxation Code a property owner who by mistake pays a county tax on property other than that intended may petition the county tax collector for relief. If the tax collector is convinced that the taxpayer has done so, he may cancel the credit on the unintended property and transfer the payment to the property intended, refunding the excess if any. Meaningfully, however, no such cancellation and transfer may be made by the tax collector "if a certificate of title has been issued respecting the intended property or if it was sold to the state." In addition, also, before transferring the erroneous payment to the intended property, the tax collector must first notify the owner of the unintended property by registered mail. The owner of the unintended property may then demand a hearing before the board of supervisors of the county, and whether a transfer will be made depends upon the decision of the board.

Appellant, on the other hand, contends that the necessary statutory authority (requiring a refund of taxes mistakenly paid by a taxpayer, even though the tax was legally and properly levied and no mistake was made by the county in the billing process or otherwise) is contained in section 5096, subdivision (b), of the Revenue and Taxation Code. The pertinent part of this section reads as follows: "On order of the board of supervisors, any taxes paid before or after delinquency shall be refunded if they were:

". . . . . . . . . . . . . .
(b) Erroneously or illegally collected. . . ." Thus, while conceding that it has not uncovered any case directly in point, appellant simply argues that since it paid the taxes which it seeks to recover under the mistaken belief that it owned the property against which these taxes were levied, they were also by necessity "erroneously collected" by the respondent county within the meaning of the terms as used in section 5096, subdivision (b).

We do not agree with appellant's contention. Revenue and Taxation Code section 5096, subdivision (b), does not state that taxes "mistakenly paid" by a taxpayer shall be refunded. To the contrary, it refers to taxes "erroneously collected," and this term connotates a mistake or error on the part of the county or its responsible officers, either in the levy

of the tax, or if not in the levy, in the collection process. Significantly, county real property taxes are levied against the real property and constitute an encumbrance against the real property and are not a personal obligation of the assessee (in the event of delinquency the county's remedy is against the real property and not against the assessee). Thus, in collecting real property taxes for which an accurate tax bill has been issued and mailed, the county's primary responsibility is to make certain that the right parcel receives credit when payment is made. In fact, it is common knowledge that the great bulk of county taxes is either paid in person on or about the due date, or by mail, and it would be an insurmountable task for the county to make certain that the person who pays the tax is also the owner of the property described in the tax bill, particularly when the property may have changed hands several times between the assessment date and the due date. Consequently, as to the named assessee, the collection process is in effect completed with the mailing of the tax bill. It is noteworthy, however, that the appellant did not allege in its complaint that the county or its officers made an error of any kind either in levying the taxes, in naming the assessee or in the billing process. Therefore, the real property taxes which appellant paid, although mistakenly paid, were not erroneously collected by the county in the normal sense of the term as that term is necessarily applied to the collection of real property taxes. We conclude that the Legislature intended to use the term ''erroneously collected'' in its ordinary and normal sense, and that if it intended to afford relief to a taxpayer who mistakenly paid county taxes, it would have said so.

Furthermore, a careful comparison of the provisions of section 5096, subdivision (b), with the provisions of sections 4911-4916 (which afford relief for taxes mistakenly paid on the wrong property) unequivocally indicates that the Legislature did not and could not have intended the term ''erroneously collected'' as used in section 5096, subdivision (b), to have the same meaning as ''erroneously paid.'' First, section 5096, subdivision (b), makes no provision for the cancellation of the payment of the tax which was made on the intended property in order to restore the county's tax lien on this property. Without such statutory machinery it is arguable that the county would be powerless to again collect its taxes once it made a refund. On the other hand, sections 4911-4916 expressly provide that the tax payment on the unin-

tended property may be cancelled, thereby making it possible for the county to restore its lien after the payment is transferred to the intended property. Second, even if it is assumed arguendo that the power of the county to cancel the tax payment on the unintended property and to restore its tax lien is implied under section 5096, subdivision (b) (which is unlikely), there would be no statutory limitations or restrictions of any kind on its power to do so. Thus, integrity of land titles would not be secure. In other words, if the county could restore its tax lien without limitations or restrictions, innocent purchasers and title companies would be powerless to protect themselves. As we have already observed, under sections 4911-4916 the tax collector may not cancel the credit and transfer the payment if the title certificate has been issued with respect to the unintended property. Finally (unlike §§ 4911-4916), no protection of any kind, by notice or otherwise, is afforded to the owner of the unintended property under section 5096, subdivision (b).

The cases cited by appellant are clearly distinguishable. In *Evans* v. *County of San Joaquin,* 67 Cal.App.2d 452 [154 P.2d 468], the error occurred in the collection process. There the taxpayer had paid the taxes under protest after the auditor had illegally demanded payment as a condition of redemption. Hence, not only were the taxes involuntarily paid, but they were also illegally and erroneously collected as well.

In *Stewart Law & Collection Co.* v. *County of Alameda,* 142 Cal. 660 [76 P. 481], the appellant alleged an erroneous assessment as well as an erroneous collection of the tax. The court simply indicated that taxes paid as the result of an erroneous assessment are erroneously collected. It is manifest that under these circumstances the error was made by the county.

In the *Estate of Brown,* 196 Cal. 114 [236 P. 144], the claim for refund was made under the Inheritance Tax Act, wherein the term ''erroneously paid'' was used. Moreover, the court there was not concerned with county tax liens or similar intricate county tax problems.

The case of *Signal Oil & Gas Co.* v. *Bradbury,* 183 Cal.App. 2d 40 [6 Cal.Rptr. 736], involved an invalid school tax. In that case, after the taxpayer had paid taxes levied against its oil leases for a number of years, it was discovered that the oil leases were not within the boundaries of the school district and therefore beyond the jurisdiction of the district to tax. Consequently, although the taxes were mistakenly paid in one

sense, they were also illegally and erroneously collected as a result of an error on the part of the taxing agency.

Appellant's intimation that the equities in this case are in its favor is not persuasive. It was something less than diligent when it paid taxes on property which it did not own. Moreover, its apparent failure to discover the mistake, or to take any action for almost three years, is even more difficult to explain. As a matter of fact, it is quite possible and even probable that the unintended property changed hands during this period. If this is so, and if appellant should prevail in its lawsuit, either the county would lose its tax lien (and its taxes) or an innocent purchaser or title company would become liable therefor. Thus, appellant's assertion that respondent county cannot possibly lose its taxes is not as incontrovertible as appellant would have us believe. It is well settled law, requiring no citation of authority, that where the rights of two or more persons are affected the one who was at fault must bear the loss.

For the reasons hereinabove set forth, we conclude that appellant did not allege sufficient facts entitling it to relief under section 5096, subdivision (b), of the Revenue and Taxation Code, and since it did not allege or attempt to allege sufficient facts to bring its case within the purview of Revenue and Taxation Code sections 4911-4916, we also conclude that the judgment of dismissal must be affirmed. As said in *Wicklund* v. *Plymouth Elementary School Dist.*, 37 Cal.App.2d 252, 254 [99 P.2d 314] "it is a familiar rule that where a right of recovery is purely statutory and is granted upon conditions, one who seeks to enforce the right must by allegation and proof bring himself clearly within the conditions." Appellant, however, goes outside of the record to assert that it communicated its mistake to the tax collector and requested that the erroneous payment be applied to property actually owned by appellant, but that the tax collector refused. Thus, relying on the case of *Keidatz* v. *Albany,* 39 Cal.2d 826 [249 P.2d 264], appellant requests this court to permit it to amend its complaint in order to state a cause of action under Revenue and Taxation Code sections 4911-4916, if we should determine that it should have proceeded under these sections instead of Revenue and Taxation Code section 5096, subdivision (b).

It is almost axiomatic that the trial court may enter a judgment of dismissal after it has sustained a demurrer to the

complaint if the plaintiff elects to stand on the complaint and fails to amend (Code Civ. Proc., § 581; *Jeffers* v. *Screen Extras Guild, Inc.,* 107 Cal.App.2d 253 [237 P.2d 51]). ▓▓▓ It is also almost axiomatic that under these circumstances the judgment of dismissal must be affirmed if the complaint is objectionable upon any ground raised by the demurrer (*Sutter* v. *Gamel,* 210 Cal.App.2d 529 [26 Cal.Rptr. 880]). Consequently, this court does not have the power to reverse the trial court by setting aside a proper judgment of dismissal in order to give appellant the opportunity to amend its complaint at this stage of the proceeding, nor does *Keidatz* stand for this proposition. That case simply reaffirms the principle that a judgment of dismissal based upon a defective complaint is not necessarily a judgment which determines the merits, and hence not necessarily a bar under the doctrine of res judicata to a subsequent action. (See also *Goddard* v. *Security Title Ins. & Guar. Co.,* 14 Cal.2d 47 [92 P.2d 804], and 3 Witkin, Cal. Procedure, p. 1938, for a complete discussion of this subject.) Consequently, it may be possible for appellant to file a new action by alleging new or additional facts which would entitle it to relief. We do not, however, pass on this point in this appeal.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.