# Wilson and Company, Inc., v. Pittsburgh

*Owen B. McManus* and *Brandt, Riester, Brandt & Malone*, for plaintiff.

*J. Frank McKenna, Jr.*, City Solicitor, and *W. S. Moorhead, Jr.*, Assistant City Solicitor, for defendant.

NIXON, J., June 1, 1955.—Plaintiff brought this suit to recover for overpayment of taxes in excess of $4,000 allegedly paid erroneously and inadvertently for the years 1950, 1951 and 1952, under the Mercantile

License Tax Ordinance of the City of Pittsburgh. These taxes were not paid under protest.

Commencing in 1948, plaintiff company paid a mercantile license tax based upon the entire volume of its business transacted in the city. In 1949, the legislature amended the general enabling Act of June 25, 1947, P. L. 1145, by Act of May 9, 1949, P. L. 898, which amendment imposed a limitation in favor of manufacturers upon the taxing power of municipalities. This amendment was before the Superior Court in the case of H. J. Heinz Company v. Pittsburgh, 170 Pa. Superior Ct. 435 (1952) and the court held that the city was prohibited from taxing, under the Acts of 1947 and 1949, any privilege, act or transaction related to the business of manufacturing. The overpayments here involved allegedly come within the ruling of that case. Defendants have filed preliminary objections to the effect that: (1) A taxpayer has no right to a refund unless he has paid the tax under protest as required by the Ordinance; and (2) the action is in effect an appeal from the refusal of the treasurer to make a refund and, therefore, the County Court of Allegheny County and not the court of common pleas has exclusive jurisdiction. It is upon these objections that the matter is now before the court en banc.

Plaintiff bases its action upon the theory that these taxes were paid erroneously and inadvertently, although paid voluntarily. Obviously, taxes paid under protest are not paid through error and inadvertence, as one who pays and protests knows exactly what he is doing, and there is no mistake either of fact or of law. But the Mercantile License Tax Ordinance provides for refunds *only* where payment is under protest. In support of its claim, plaintiff relies principally upon the Act of May 21, 1943, P. L. 349, 72 PS §5566(b):

"Whenever any person or corporation of this Commonwealth has erroneously or inadvertently paid or caused to be paid into the treasury of any political subdivision, directly or indirectly, any tax or taxes on real or personal property, or any license fee or fees, under an assumption that such taxes or license fees were due and owing, when in fact such taxes or license fees, or a part thereof, were not due and owing to the political subdivision, then in such cases the authorities of the political subdivision, upon due proof of any such erroneous or inadvertent tax or license fee payments, are hereby directed to draw their warrant upon the treasurer of such political subdivision in favor of such person or corporation, to make refund out of the public funds of such tax or taxes or license fee or fees to which the political subdivision has no valid claim: . . ."

The nature of the mercantile license tax is well settled. It is not a property tax, but an excise imposed on the privilege of doing business. Nor is it, strictly speaking, a license fee, as its purpose is plainly to raise revenue. The Act of 1943 does not specifically enumerate this species of tax, although the title reads: "An act requiring political subdivisions to refund *taxes* and license fees erroneously and inadvertently paid." (Italics supplied.) It might also be noted at this point that in 1943 property taxes were the only substantial and identifiable taxes which a city could collect; the so-called "tax-anything" power was not conferred until the Act of 1947. Prior to the Act of 1943 and its predecessors on the same subject, it was true as a general principle of law that taxes paid voluntarily could not be recovered, even though it subsequently appeared that they were not properly assessable against the taxpayer. To what extent that principle has been changed or modified is the basic question before us.

Of course, the object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Proper matters for consideration are the occasion and necessity for the law, the mischief to be remedied, the object to be attained, the former law on the subject and the consequences of a particular interpretation. In Longacre Park Heating Co. v. Delaware County, 160 Pa. Superior Ct. 252, 255 (1947), real property taxes were involved, but the court considered the Act of 1943 and its application, and said:

"The law prior to the Act of 1943 sanctioned the unmoral practice under which municipalities, in general, kept and used for municipal purposes, funds however erroneously paid and unlawfully received by them. The former laws on the subject, the Act of May 8, 1929, P. L. 1656, and of June 2, 1937, P. L. 1211, did no more than to make the refund of taxes, erroneously paid, discretionary, first as to counties and then as to all municipal political subdivisions. Prior to the 1937 act the borough was powerless to grant refunds of taxes erroneously but voluntarily paid, without protest. . . . Obviously, there was mischief to be remedied, supplying the occasion and necessity for the 1943 act; *the object to be attained was to impose upon municipalities standards of common honesty in relation to the collection of taxes, compelling them, for the first time, to refund taxes paid to them under mistake of law.*" (Italics supplied.)

If the averments of the complaint are true, then precisely the same "mischief" exists here; the municipality is attempting to keep funds paid under a mistaken interpretation of the taxing law, money which it was not entitled to collect in the first place. In this regard we see no sound reason for distinction between, and different treatment of, taxes, mercantile license taxes or license fees. It is rather anamolous if cities

can say, "Your taxes were overpaid through error, and we were not legally entitled to collect those amounts. Common honesty, and the legislature, compel us to make refunds on the property taxes, but we recognize no such compulsion as to license taxes, and we will therefore keep the money". In our opinion, the court in the Longacre case, supra, has stated what was clearly the legislative intent and object in the Act of 1943, and it should be given effect.

A further consideration is that powers of municipal bodies are derived from the Commonwealth. They have only such rights, powers and authority as are granted by the legislature. As the court stated in the H. J. Heinz case, supra, at page 438:

"Under §1 of Art. XV of the Constitution of this State the Legislature may delegate to cities the power to levy, assess and collect taxes, for general revenue purposes, subject however 'to such restrictions, limitations and regulations, as may be imposed by the Legislature.' But as to the raising of revenue by taxation, as in other phases of the exercise of local self-government, cities have only such powers and authority as have been delegated to them by the Legislature, within the restrictions, limitations, and regulations imposed."

Since the mercantile license tax arises from a delegation of the Commonwealth's inherent taxing power, subject to the State's right to tax, it is both relevant and important to inquire into the practice and obligation of the Commonwealth itself in cases where taxes are paid through error and inadvertence. Under the Act of April 9, 1929, P. L. 343, and subsequent amendments, 72 PS §501-503, the Board of Finance and Revenue has the power and the duty to hear petitions for refund of taxes, license fees, etc., "to which the Commonwealth is not rightfully or equitably entitled. . . ." The statutes provide a special limitation of five

years "When any tax or other money has been paid to the Commonwealth . . . under an interpretation of such provision (of an Act of Assembly) subsequently held by such court to be erroneous": Section 503(a)(4).

If the taxes here in question had been imposed by the Commonwealth instead of by one of its political subdivisions, plaintiff would have a clear remedy. Upon due proof of its claim before the Board of Finance and Revenue, a refund would be in order. If the city's contention is correct, then in that respect its power is greater than that of the Commonwealth, for the State, the fountainhead of the taxing power, is obliged to make refunds under the circumstances here alleged. It is inconceivable that the legislature intended to delegate the authority to tax to political subdivisions, while leaving them free of the concomitant obligation which binds the Commonwealth itself. If defendant city is not rightfully or equitably entitled to the funds here involved, plaintiff should have its remedy at law.

The second question raised by defendant city is that jurisdiction of the matter is in the county court, and not in the court of common pleas. The Act of December 22, 1951, P. L. 1718, 17 PS §626(l) provides that county court shall have jurisdiction:

". . . in all cases of appeal from decisions of collectors of mercantile taxes authorized by any act of Assembly and imposed by any political subdivision within the territorial limits of the jurisdiction of the court."

In our opinion this is actually, as well as in form, an action of assumpsit, with the amount in controversy in excess of $2,500, and we have jurisdiction. It is not an appeal under the procedure set forth in the Mercantile License Tax Ordinance, which makes no provision for refund in cases of this kind. This is a suit

against the city and its treasurer for money allegedly paid through inadvertence and mistake, and based upon the provisions of the Act of 1943. Although it might be desirable, as the city has pointed out, to centralize all mercantile tax cases in one court, this is not an appeal from a decision of the collector, and as the court of common pleas hears many cases involving tax statutes, we see no frustration of legislative purpose in upholding our jurisdiction here.

Accordingly, the preliminary objections raised by defendants will be dismissed. Soffel, J., concurs in this opinion. Ellenbogen, J., dissents in a separate opinion.

### Order

And now, June 1, 1955, it is ordered that the preliminary objections ex parte defendants, City of Pittsburgh and David A. Smith, treasurer, be and the same are hereby dismissed. Defendants are allowed 20 days from the date hereof to file an answer on the merits.

Eo die, exception noted to defendants, and bill sealed.

### Dissenting Opinion

ELLENBOGEN, J.—We are obliged to dissent from the majority of the court because we believe that the learned majority has misconstrued the Act of May 21, 1943, P. L. 349, 72 PS §5566(b), and the Act of December 22, 1951, P. L. 1718, 17 PS §626, sections (l) and (n).

This case is before the court en banc on the motion of defendants who filed preliminary objections and moved for judgment for the following reasons:

1. That the complaint shows on its face that it is an action brought to recover alleged overpayments of mercantile taxes imposed by the City of Pittsburgh under Ordinance No. 488, approved December 1, 1947, as amended.

2. That said ordinance provides in section 12 for refund of payments made under protest, and that said complaint does not allege that the payments of the mercantile tax were made under protest. Hence, refunds are not authorized by the ordinance.

3. That the complaint alleges a refusal by the treasurer, defendant, to make a refund, and if plaintiff is aggrieved by this decision of the treasurer, it must file an appeal to the County Court of Allegheny County and not to this court, under section 1 of the Act of December 22, 1951, P. L. 1718.

4. That this court has no jurisdiction over the matters alleged in the complaint.

The complaint is in assumpsit. We have carefully examined it. It alleges that plaintiff filed with the Treasurer of the City of Pittsburgh mercantile license tax returns for the years 1950, 1951 and 1952, which included receipts from products manufactured by plaintiff elsewhere than in the City of Pittsburgh, but distributed and sold through plaintiff's Pittsburgh business office, that in accordance with these returns plaintiff paid for said years the sum of $1,353.61, $1,708.76 and $1,668.14, respectively, or a total of $4,730.51 on articles manufactured elsewhere, that the City of Pittsburgh was without authority to levy and collect these taxes under the provisions of the Act of May 9, 1949, P. L. 898, and the decision of the Superior Court of Pennsylvania in H. J. Heinz Co. v. Pittsburgh, 170 Pa. Superior Ct. 435, in view of the fact that these products were manufactured elsewhere than in the City of Pittsburgh, that "on or about June 25, 1952, plaintiff discovered that it had erroneously and inadvertently paid Mercantile License Taxes" and "made a demand upon the City of Pittsburgh and its Treasurer, David A. Smith, for a refund of such taxes erroneously and inadvertently paid", which demand the treasurer refused.

Under these facts, pleaded by plaintiff, this action cannot be maintained.

The rule is well established in this State that a voluntary payment of taxes to public authorities cannot be recovered unless the statute so provides. This statement of the law is approved and quoted at length in the recent opinion by Mr. Justice Jones in Calvert Distillers Corp. v. Board of Finance and Revenue, 376 Pa. 476, 479 (1954) :

"The conclusion of the learned court below was inescapable. The plain language of the Pennsylvania statute which authorizes the refund of taxes paid mistakenly, improperly or even inadvertently did not admit of any other result. A voluntary payment of taxes can be subsequently recovered by a taxpayer only if and as a statute so provides. In Philadelphia & Reading Coal & Iron Co. v. Tamaqua Borough School District, 304 Pa. 489, 494, 156 A. 75, this court recognized that '. . . the well established rule in this State is that a voluntary payment of taxes to the public authorities, without any duress, threats, or misstatements on the part of the latter, or protest and notice of intention to reclaim on the part of the taxpayer, precludes subsequent recovery of any overpayment: Shenango Furnace Co. v. Fairfield Twp., 229 Pa. 357; McCrickart v. Pittsburgh, 88 Pa. 133. If the payment was a voluntary one, it may not be recovered unless a statute so provides: Investor's Realty Co. v. Harrisburg, 281 Pa. 200.' In Wilson v. Philadelphia School District, 328 Pa. 225, 243, 195 A. 90, Mr. Chief Justice Kephart, after quoting the above from Philadelphia & Reading Coal & Iron Co. v. Tamaqua Borough School District, said for this court that,—'In view of these authorities, *no taxes which have been voluntarily paid in the past can now be recovered without the aid of a statutory remedy.*' See also Phipps et al., Trustees,

v. Kirk, Treasurer, 333 Pa. 478, 483, 5 A. 2d 143." (Italics supplied.)

See also our opinion in H. J. Heinz Co. v. City of Pittsburgh, at no. 3331, October term, 1948.

The learned majority disregards this rule of law. It bases its decision on the Act of May 21, 1943, P. L. 349, 72 PS §5566b, which is as follows:

"Whenever any person or corporation of this Commonwealth has *erroneously* or *inadvertently* paid or caused to be paid into the treasury of any political subdivision, directly or indirectly, any tax or taxes on *real or personal property, or any license fee or fees,* under an assumption that such taxes or license fees were due and owing, when in fact such taxes or license fees, or a part thereof, were not due and owing to the political subdivision, then in such cases the authorities of the political subdivision, upon due proof of any such erroneous or inadvertent tax or license fee payments, are hereby directed to draw their warrant on the treasurer of such political subdivision in favor of such person or corporation, to make refund out of the public funds of such tax or taxes or license fee or fees to which the political subdivision has no valid claim: . . ." (Italics supplied.)

It must be noted that before the Act of 1943 can apply, two elements must be present:

(a) The taxes must have been paid "erroneously or inadvertently"; and

(b) they must be taxes on *"real* or *personal property, or any license fee* or fees".

Both these necessary elements are absent in the instant case.

Plaintiff did not pay the taxes (a), "erroneously or inadvertently", and (b), the taxes here involved are not "real or personal property taxes, or any license fee or fees".

In order for the payment of taxes to have been made "erroneously or inadvertently", such payment must be made under a mistaken assumption as to *facts* and *not* as to the *law*: Phipps v. Kirk, 333 Pa. 478, 483:

" 'This court has uniformly adhered to the well-established rule that "money voluntarily paid on a claim of right, where there has been no mistake of fact, cannot be recovered back on the ground that the party supposed he was bound in law to pay it when in truth he was not": Union Ins. v. City of Allegheny, 101 Pa. 250, 255.' "

As Mr. Justice Jones said in the case of Pittsburgh Coal Co. v. Forward Twp. School District, 366 Pa. 489, 491: "There is not even the slightest intimation that the plaintiff did not knowingly and understandingly pay the precise amounts of the taxes imposed upon it by the duly enacted tax resolutions. . . . That the resolutions later proved to be legally ineffectual did not serve to make the plaintiff's intentional and deliberate payments erroneous or inadvertent." And again at page 492 it is stated:

"In Columbia Casualty Company v. Westmoreland County, 365 Pa. 271, 274, 74 A. 2d 86, it is implict that a payment of taxes to be made erroneously or inadvertently must be made *'under (a) mistaken assumption as to the facts.'* The language of the Supreme Court of South Dakota in Security National Bank v. Twindle, 52 S. D. 352, 217 N. W. 542, 544, in construing the term 'erroneously paid' as a prerequisite to a tax-recovery under a statute of that State, is so apposite presently as to justify the following quotation therefrom: 'We think the word "erroneously," as used in subdivision 5 of section 6813, must be taken in its ordinary sense of "mistakenly". There was no error or mistake in the payment made by the plaintiff. It paid the very tax and the amount of tax that it intended to pay; nor was there any error in noting the

payment or in issuing the receipt. In our view, the words "erroneously paid" were clearly intended to cover cases where payment was made under a misapprehension as to what was being paid. But a tax *intentionally and understandingly paid*, although the assessment was made or the tax levied incorrectly, *is not erroneously paid*, and we do not think that section 6813 was designed to allow a refund of taxes in such a situation.' See, also, Shea v. State Tax Commission, 101 Utah 209, 120 P. 2d 274, 275, which cites and accords with Security National Bank v. Twindle, supra. In Estate of Brown, 196 Cal. 114, 236 P. 144, 147, and in Kelshaw v. Superior Court, etc., 137 Cal. App. 189, 30 P. 2d 432, 433, in treating with a statute of California providing for refunding of inheritance taxes 'when any amount of said tax shall have been erroneously paid', it was respectively held that the statutory provision has no applicability to the payment of an improper assessment or to a case where there has been a payment of the exact amount specified by the assessment. . . ."

As will be noted from the above quotation, this rule is firmly established in Pennsylvania. It is also the rule in the other States.

The payment of taxes in the instant case was not made "erroneously or inadvertently", as these terms are used in the Act of 1943.

It is true that in paragraph 12 of its complaint, plaintiff avers that it "erroneously and inadvertently paid mercantile license taxes for the years 1950, 1951, and 1952 . . .", but that is a "bald and unsupported conclusion in direct conflict with the material facts pleaded by the complaints", and, therefore, cannot be considered: Pittsburgh Coal Co. v. Forward Twp. School Dist., 366 Pa. 489, 491.

Further, a careful reading of the language of the Act of 1943, which the learned majority relies upon

for its decision, is fatal to the conclusion reached by it. The taxes here involved are not *real or personal property* property taxes, which are the *only* taxes with which the Act of 1943 deals (aside from license fees). That act, and we shall quote again from it, specifically refers to:

". . . any tax or taxes on *real or personal property*, or any license fee or fees, . . .".

That the mercantile license tax here involved is not a property tax has been conclusively adjudicated in the case of Federal Drug Co. v. Pittsburgh, 358 Pa. 454. Nor is it a license fee. A license fee is imposed under the police power of the State for the purpose of regulation as opposed to a tax imposed for revenue purposes: Pennsylvania Liquor Control Board v. Publicker, etc., 347 Pa. 555; Rock v. Philadelphia, 127 Pa. Superior Ct. 143 (1937), affirmed in 328 Pa. 382. The city has provided for license fees in Ordinance No. 489 of 1947, and for mercantile taxes in Ordinance No. 488 of 1947, which is the ordinance involved here.

The learned majority concedes that the tax involved here "is not a property tax". In its opinion it states that the "nature of the mercantile license tax is well settled. It is not a property tax, but an excise imposed on the privilege of doing business. Nor is it, strictly speaking, a license fee, as its purpose is plainly to raise revenue. . . ."

We are unable to find anywhere in the majority opinion any reason why the plain language of the Act of 1943, which, *by its express terms*, applies only to taxes on real and personal property and license fees, should be disregarded and be made to apply to a mercantile tax which, as the majority concedes, differs in its nature and basis from the real and personal property taxes dealt with in the Act of 1943.

The majority appears to be swayed by the "mischief to be remedied" by the Act of 1943, which act was

designed to prevent the municipality from retaining taxes which it could not originally have collected under the taxing ordinance. Counsel for the city defends this practice on the ground that since municipalities must provide for proper budgetary controls, it is not unreasonable to require one who disputes a tax liability to make payment under protest (as required in section 12 of the Mercantile License Tax Ordinance) before a refund may be granted. In such a case refunds are provided for by the ordinance.

We fully agree with the learned majority that this is a situation which needs correcting. Such correction, however, must come from the legislature and not from the courts.

We are dealing here with the imposition and collection of taxes which are governed solely by statutes enacted by the State legislature and approved by the Governor. It is the function of the courts to apply the law, not to make law. This is especially so in connection with taxation, a subject which is solely governed by statutes and not by common law. For the court to disregard the plain language of a tax statute and to substitute therefor different provisions, in accordance with what the court conceives to be just and equitable, would create a far greater evil than the one which all of us would like to see corrected here.

The legislature is now in session. It has the opportunity to correct what appears to be an evil.

There is still another basic reason why we are obliged to dissent from the majority. That is the Act of December 22, 1951, P. L. 1718, 17 PS §626, which provides that the county court shall have jurisdiction, inter alia:

". . . (l) in all cases of appeal from decisions of collectors of mercantile taxes authorized by any act of Assembly and imposed by any political subdivision

within the territorial limits of the jurisdiction of the court."

"(n) The jurisdiction hereby conferred in clauses (b), (c), (h), (i), (j), (k), (l) and (m) shall be *exclusive* within the territorial limits of its jurisdiction." (Italics supplied.).

The same act also provides for the transfer to the county court of all mercantile tax appeals which were then pending and undisposed of in the court of common pleas.

In accordance with the above statute, section 8(*b*) of the Mercantile License Tax Ordinance of the City of Pittsburgh was amended to provide that: "Any person aggrieved by any decision of the Treasurer shall have the right to appeal to the County Court of Allegheny County as in other cases provided."

In effect, the pending suit, while a pleading in assumpsit, is an appeal from the "decision" of the collector of mercantile taxes of the City of Pittsburgh. If plaintiff is entitled to relief, he must use the remedy provided by the Act of 1951.

Section 13 of the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, 46 PS §156, provides as follows:

"In all cases where a remedy is provided or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect."

This act has been interpreted by our courts in innumerable cases, as late as Pittsburgh Coal Co. v. Forward Twp. School District, 336 Pa. 489, 494, where, citing Commonwealth v. Lentz, 353 Pa. 98, 104, and other cases, it was said " 'In practice, that has meant that one who fails to exhaust his statutory remedies

may not thereafter raise an issue which could have and should have been raised in the proceeding afforded by his statutory remedy.' . . . 'There has been developed in this Commonwealth a doctrine, based on an early statute, that where a remedy or method of procedure is provided by an Act, its provisions shall be strictly pursued and *exclusively applied*' (Italics supplied). See also Colove v. Robesonia Borough, 364 Pa. 626, 628, 73 A. 2d 679. . . ."

In the instant case the legislature has provided a remedy by appeal to the county court and this remedy must be pursued.

The Supreme Court in the case of Pittsburgh Coal Co. v. Forward Township School District, supra, dealt specifically with the question whether a taxpayer who was entitled to relief under the provisions of the Act of May 21, 1943, P. L. 349, could sue in assumpsit as provided in that act, or was obliged to avail himself of the remedy (appeal to the proper court) provided for by the tax statute itself. It held that the Act of 1943 gave to a taxpayer a *right of action* but that the *remedy* provided in the Act of 1943 must give way to the statutory remedy of appeal, in view of the Act of 1806. As Mr. Justice Jones, speaking for the court, page 495, said in that case: ". . . the appellant is nonetheless without standing to question in a common law action its payments of taxes the validity whereof could have been determined by means of the legal machinery statutorily provided by Act No. 481. The contention that the plaintiff is actually endeavoring to assert a statutory *right* fails to recognize that the inhibition of the Act of 1806 is against the use of a common law *remedy* where a statutory *remedy* obtains. In other words, it is the remedy (*e.g.*, assumpsit) as distinguished from the right of action under the Act of 1943 that is not available to the plaintiff in the circumstances." (Italics used in opinion of the Supreme Court.)

It is, therefore, clear that if plaintiff has a remedy, the jurisdiction lies exclusively in the county court and not in the court of common pleas. This carries out the legislative intent to relieve the court of common pleas of the burden of such appeals or actions and to place the handling of all mercantile tax cases in county court. The wisdom of such legislation cannot be doubted in view of the obvious benefits to be gained by centralizing such appeals in a single court.

In its supplemental brief plaintiff refers to the case of Isaly Dairy Company v. Pittsburgh, 379 Pa. 108, where taxes voluntarily paid by Isaly, later found not to be collectible, were refunded. Unfortunately for plaintiff, that case is no authority on the issue involved in the instant case. In the Isaly case the question whether Isaly was entitled to a refund was not presented or discussed either in the lower court or in the Supreme Court.

The case was tried on the assumption that if Isaly was successful in its appeal for the year 1953, it would be entitled to refunds for the years 1950, 1951 and 1952. See paragraphs 11 through 14 of Isaly Petition (Record on Appeal, 6a) admitted in defendants' answer: Record on Appeal, 24a. Since the question was not raised or discussed, the Isaly case can have no bearing whatever on the case before us: 14 Am. Jur. 291, Courts, §76:

"A decision is not an authority upon a question not considered by the court, though involved in a case decided. In other words, an opinion is not authority for what is not mentioned therein and what does not appear to have been suggested to the court by which the opinion was rendered. . . ."

A similar statement is found in 21 C. J. S. 380, Courts, §209.

In Brolasky's Estate, 302 Pa. 439 (1931), the Supreme Court of Pennsylvania, in discussing decisions

in which a particular question could have been raised but was not raised, dismissed such cases saying:

". . . nothing can be stare decisis which was not in fact considered and determined: . . ."

For the reasons stated, we would enter judgment in favor of defendant. While under rule 1028(*d*) of the Rules of Civil Procedure plaintiff has the right to plead over within 'such time as the court may allow, nothing would be gained by allowing plaintiff to avail itself of that right, since the facts are admittedly as stated in the complaint. The entry of such a judgment is approved in the Pittsburgh Coal Company case, supra. See also Anderson's Pennsylvania Civil Practice, vol. 2, page 483.