[File No. 6950]

A. P. BOE, Executor of the Estate of Hans Hansen, Deceased, Respondent, v. STEELE COUNTY, a Public Corporation, and the State of North Dakota, Appellants.

(19 NW2d 921)

Opinion filed October 5, 1945

*Alvin C. Strutz,* Attorney General; *C. E. Brace,* Assistant Attorney General; *Charles Simon,* Attorney for State Tax Department, for appellants.

*R. F. Gallagher,* for respondent.

CHRISTIANSON, Ch. J. The plaintiff Boe brought this action as Executor of the Last Will and Testament of Hans Hansen to recover the sum of $2363.52 which he, as such executor, paid as estate tax upon the estate of said Hans Hansen in excess of the amount of estate tax actually and legally due from or chargeable to or upon said estate.

The material and undisputed facts are substantially as follows:

The Last Will and Testament of Hans Hansen was admitted to probate in the county court of Steele County and Letters Testamentary were issued to the plaintiff Boe. By the terms of said Will Hans Hansen disposed of the whole of his estate as follows: (1) Bequests to various persons, aggregating in all $9700.00; (2) Bequests, aggregating in all $14,000.00, to domestic religious, charitable, and educational corporations, societies, and associations; (3) Bequests, aggregating in all $57,925.25, to foreign religious, charitable, and educational corporations, societies, and associations. In due course of administration, the plaintiff as executor prepared a verified estate tax return upon the form prescribed by the tax commissioner and filed the same with the county court, together with a copy of the Last Will and Testament and the Inventory and Appraisement. In such return the plaintiff claimed as exempt from estate tax the bequests made both to the domestic and to the foreign religious, charitable, and educational corporations, societies, and associations, for the purpose of carrying on religious, charitable, and educational work. The county court determined that the bequests for religious, charitable, and educational purposes to domestic religious, charitable, and educational corporations, societies, and associations, aggregating $14,000.00, were exempt from the estate tax and should be deducted from the value of the estate in computing the tax; but the court refused to exempt and to deduct from the valuation of the estate the bequests (aggregating $57,925.25) made for such purposes to foreign religious, charitable, and educational corporations, societies, and associations, and required that the plaintiff amend the estate tax return so as to conform with the determination so

made. Upon the valuation as so fixed the county court by order made October 29, 1940 assessed the estate tax at $2557.52. On February 14, 1941 the plaintiff paid the full amount of the estate tax as assessed by the court. It is admitted that at the time the tax was assessed and paid, the county court and the State Tax Commissioner were of the honest but mistaken belief that bequests to foreign religious, charitable, and educational corporations, societies, and associations for religious, charitable, and educational purposes were not exempted from the estate tax; and that the plaintiff paid such tax in reliance upon the action of the public officials and in the honest but mistaken belief that the amount assessed by the county court was the correct amount of such tax.

On March 24, 1942 this court in the decision rendered in McKee v. State, 71 ND 545, 3 NW2d 797, ruled that the provisions of the Estate Tax Act exempting from an estate tax " 'The amount of all bequests, legacies, devises, or transfers . . . to or for the use of any corporation, institution, society, or association, whose sole object and purpose is to carry on charitable, educational, or religious work,' apply to bequests, legacies, devises, or transfers to any such corporation, institution, society, or association located without the state as well as to one located within the state." The plaintiff, upon becoming aware of this decision and of the error that had been made in the determination and assessment of the estate tax, which the plaintiff had paid, filed an application with the county court calling attention to the fact that the tax which had been assessed and which the plaintiff had paid was excessive under the decision of the Supreme Court of North Dakota rendered interim the payment of the estate tax and the filing of such application, and demanded a refund of the sum of $2363.52, the amount which the plaintiff had been required to pay and had paid in excess of the estate tax which might legally be assessed and collected. On January 6, 1943 the county court made an order granting the application for refund. In such order the court found that the plaintiff had overpaid the correct and lawful estate tax by $2363.52 and directed the county treasurer of

Steele County to pay the same to the plaintiff as an overpayment of the estate tax. The State Tax Commissioner disapproved such order of the county court, specifying as a ground of disapproval that no appeal had been taken from the order of the county court made October 29, 1940 making the assessment; that such order had become final and was res judicata of the amount of the tax. Thereupon the plaintiff brought this action to recover the amount of the overpayment and in his complaint alleged in substance the above-stated facts. The defendants in their answer, in effect, admitted the allegations of the complaint and asserted as a defense that no appeal had been taken from the order made by the county court of Steele County dated October 29, 1940 determining and assessing the estate tax; that such order had become final and was res judicata of the amount of the tax. The defendants as a further defense asserted that "there was no mistake or involuntary payment of the estate tax so determined sufficient in law to entitle the plaintiff to a refund of the estate tax so paid or any part thereof; and that the county court of said Steele County was without jurisdiction or power to make said order dated January 6, 1943" ordering a refund and repayment of the amount of the overpayment. The trial court rendered judgment in favor of the plaintiff for the amount of the overpayment, and the defendants, Steele County and the State of North-Dakota, have appealed from the judgment.

In appellants' brief it is said that the issues on this appeal are as follows:—

1. Whether the failure of the plaintiff to appeal from the order of the county court dated October 29, 1940, which assessed the estate tax, operated to make such order final and conclusive and deprived the county court of jurisdiction to enter the order made January 6, 1943 directing that the overpayment be repaid.

2. Whether the payment of the estate tax made by the plaintiff on February 14, 1941 was a voluntary payment, and if it were, whether the plaintiff is entitled to recover the amount of the overpayment.

The provisions of the estate tax laws of North Dakota, in force at the time the tax was assessed and paid and the order for refund made, pertinent to the consideration and determination of the issues thus stated are as follows:—

"Each judge of the County Court shall have full authority, and it shall be his duty to assess the taxes hereby imposed at the time of probate . . . ." Laws 1927, ch 267, § 4, subdiv 1. (ND Rev Code 1943, § 57–3714.)

"It shall be the duty of the County Court having jurisdiction over any estate to assess the tax payable thereon before final decree of distribution of said estate has been made . . . ." Laws 1927, ch 267, § 4, subdiv 2. (ND Rev Code 1943, § 57–3714.)

"The taxes imposed by this act shall be due and payable at the death of the Decedent. The transfers shall be considered to take place at time of death, and all appraisals shall be as of that date, except as in this act otherwise provided." Laws 1927, ch 267, § 4, subdiv 3. (ND Rev Code 1943, § 57–3716.)

"In all estates which under the provisions of this act are exempt from the payment of any tax, the County Court shall issue its Order exempting such Estate from the payment of any estate tax. Such order shall contain the total appraised valuation of said estate, together with the names and relationship of the beneficiaries thereunder. A copy of said Order shall be sent to the State Tax Commissioner." Laws 1927, ch 267, § 4, subdiv 5. (ND Rev Code 1943, § 57–3718.)

"The State Tax Commissioner shall have full supervision of the enforcement and collection of all taxes under this act, and shall make such rules and regulations as may be necessary for the interpretation and enforcement thereof." Laws 1927, ch 267, § 5, subdiv 1. (ND Rev Code 1943, § 57–3719.)

"The appraisals made by the County Court shall be subject to the approval of the State Tax Commissioner. He may accept the valuation in the Inventory as reported by the appraisers appointed by the County Court, or he may petition the Judge of the County Court to appoint a time and place for hearing, of the said Inventory and Appraisement, at which time and

place all issues of law and fact pertaining to the assessment of the tax hereby imposed, shall be heard. The County court shall cite all parties interested to appear at such hearing, and may issue subpoenas to compel the attendance of witnesses. The State Tax Commissioner shall upon demand of the Executor, Administrator, trustee, or beneficiary of the Estate, or may of his own volition, refuse to accept the appraisal of an estate made by the County Court. In such case, the State Tax Commissioner shall, on demand of the Executor, administrator, trustee or beneficiary of the Estate, employ specially qualified appraisers, to be paid out of the funds of the estate. If no such demand is made, the State Tax Commissioner may on his own motion either in person or by representative, make such revaluations as shall be just and equitable. Any executor, administrator, trustee or beneficiary of the estate if not satisfied with such additional appraisal, may appeal to the State Tax Commissioner, which appeal shall be heard and determined as in other cases; provided said appeal shall be made within thirty (30) days from the date on which the notice of the decision of the State Tax Commissioner is filed with the county court of the county in which the estate is being probated. The executor, administrator, trustee or beneficiary, if not satisfied with the final decision of the State Tax Commissioner, may within thirty (30) days from such decision exercise such right of appeal to any Court of competent jurisdiction as is provided from other decisions of the State Tax Commissioners." Laws 1927, ch 267, § 5, subdiv 3. (ND Rev Code 1943, § 57–3720.)

"All assessments shall be made upon appraisals of the full and fair cash value of the property to be transferred as of the date of the death of the decedent." Laws 1927, ch 267, § 6. (ND Rev Code 1943, § 57–3721.)

"The County Treasurer in the county wherein the probate is held, shall collect the tax levied under this act and shall certify them to the County Auditor at the end of each calendar month. He shall pay over to the State Treasurer, 35% of such tax, retaining 65% thereof, which 65% shall be deposited to the credit of the general fund of the county. Provided, that in all

cases wherein no County Court has jurisdiction, the amount of tax shall be determined by the State Tax Commissioner, and the State Treasurer shall collect the same and deposit to the credit of the general fund of the state. No executor, administrator, or trustee shall be entitled to a final discharge in an estate in settlement of which a tax is due under the provisions of this act, unless he shall produce a receipt showing the payment of such tax. In case an overpayment of such tax has been made, such overpayment shall be repaid out of any estate tax funds in the hands of the county treasurer upon an Order of the Court approved by the State Tax Commissioner. A certified copy of such order shall be filed with the State Treasurer and he shall credit the account with the amount of the state's proportionate liability on such refund. In any case where the State Treasurer has collected the entire inheritance tax, refunds may be made upon approval of the State Tax Commissioner in the same manner as other claims against the state are paid." Laws 1927, ch 267, § 9. (ND Rev Code 1943, § 57–3724.)

"Administrators and executors shall be liable for all taxes payable on the estate with interest as hereinbefore provided until the same have been paid. Provided, however, that in no case shall such administrator or executor be liable for a greater sum than is actually received by him." Laws 1927, ch 267, § 16. (ND Rev Code 1943, § 57–3731.)

Appellants' first contention is that the order made by the county court on October 29, 1940 assessing the estate tax is res judicata of all questions relating to the legality and the amount of the estate tax; that such order became final and conclusive when the time for appeal expired; that consequently, the amount of the estate tax legally and actually due was not subject to review or consideration by the county court when it made its order dated January 6, 1943 ordering a refund of an overpayment; and that any question as to the amount of the estate tax and whether there had been an overpayment is not subject for review by the courts at all. Appellants contend that in order to question the amount of the estate tax and whether an overpayment had been made, it was incumbent upon the

plaintiff to appeal from the order of October 29, 1940 and have the order modified so as to reduce the amount of the assessment to the amount of the legal tax, and that upon the expiration of the time allowed for appeal therefrom, the order became final and conclusive and is now res judicata upon the legality and amount of the estate tax as assessed in such order. The contention is predicated upon the assumption that the order of the county court assessing the estate tax was subject to appeal, and no attempt is made to point out the statutory provisions rendering the order appealable. Assuming, without deciding, that such order was subject to appeal, we are agreed that the failure to appeal does not bar the right to a refund for an overpayment. If an order assessing the estate tax is subject to appeal, then under any of the statutory provisions relating to appeal, the appeal must be taken within thirty (30) days. If the order of the county court making the assessment has the effect of establishing finally and conclusively that the amount of the assessment is the amount of tax legally and actually due and payable so that the taxpayer cannot be heard to say after the time for appeal has expired, on an application for a refund of overpayment, that the amount assessed, which he has paid, was in excess of that legally owing for such tax, then obviously the order is equally final and conclusive in this respect after the expiration of the period for appeal whether the estate tax has or has not been paid. The provisions of the statute relating to a refund for an overpayment come into operation only after payment has been made. The statute presupposes not only that an assessment has been made, but also that the assessment has been paid and that the amount paid is in excess of that which under the law is legally due for taxes.

If the order making assessment becomes final and conclusive as to the legality and amount of the tax legally and actually due, so that after the time for appeal has expired the amount of the assessment must control on an application for refundment, then obviously, such order is equally final and conclusive after the expiration of the time for appeal whether payment

has or has not been made; so if defendants' contention is correct, the assessment in this case was final and conclusive before and when the payment was made.

The provisions for refundment of overpayment of taxes are inserted in statutes not only as a matter of fairness and justice, but as an inducement to the taxpayer to pay the tax promptly. The provision for refundment of overpayment in the Estate Tax Act of this state set forth above is inconsistent with any legislative intention that the order making the assessment should become final and conclusive upon the amount of the tax actually and legally due so as to bar the right of a party to refundment unless the order for assessment is attacked by, and reversed or modified on, appeal. The provision attaches no condition to the right to a refund except alone the fact that an overpayment has been made. This provision is not an anachronism in laws of this country relating to taxes of the type involved here. The Acts of Congress and the laws of the various states contain provisions of varying types relating to this same matter.

In considering rights and obligations resulting from a payment to the Federal Government in excess of the estate tax legally assessable, the Supreme Court of the United States (Bull v. United States, 295 US 247, 259–261, 79 L ed 1421, 1427, 1428, 55 S Ct 695) said:

"A tax is an exaction by the sovereign, and necessarily the sovereign has an enforcible claim against every one within the taxable class for the amount lawfully due from him. The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment. The assessment may be a valuation of property subject to taxation which valuation is to be multiplied by the statutory rate to ascertain the amount of tax. Or it may include the calculation and fix the amount of tax payable, and assessments of federal estate and income taxes are of this type.

Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligation calls for some procedure whereby payment can be enforced. . . .

In recognition of the fact that erroneous determinations and assessments will inevitably occur, the statutes, in a spirit of fairness, invariably afford the taxpayer an opportunity at some stage to have mistakes rectified. Often an administrative hearing is afforded before the assessment becomes final; or administrative machinery is provided whereby an erroneous collection may be refunded; in some instances both administrative relief and redress by an action against the sovereign in one of its courts are permitted methods of restitution of excessive or illegal exaction. Thus the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in an action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and *his only redress for unjust administrative action is the right to claim restitution.* But these reversals of the normal process of collecting a claim cannot obscure the fact that after all what is being accomplished is the recovery of a just debt owed the sovereign. *If that which the sovereign retains was unjustly taken in violation of its own statute, the withholding is wrongful. Restitution is owed the taxpayer.* Nevertheless he may be without a remedy. But we think this is not true here.

In a proceeding for the collection of estate tax, the United States through a palpable mistake took more than it was entitled to. Retention of the money was against morality and conscience. . . .

*While here the money was taken through mistake without any element of fraud, the unjust detention is immoral and amounts in law to a fraud on the taxpayer's rights."*

What was said by the United States Supreme Court is quite applicable here. In this case the executor, in compliance with the order of the public agency charged with the duty of assessing the estate tax, paid out of the funds of the estate the amount which such agency declared to be due as estate tax. The executor paid the amount demanded in reliance upon the order so made by the public agency charged with the duty of making the determination. It is undisputed that the executor paid, and that the public officers charged with the duty of collecting the tax received and turned into the public treasuries, the sum of $2363.52 in excess of the amount of estate tax actually and legally owing. These moneys did not belong to the state or to the county. They were exacted through a mistake, and although the exaction was in good faith and without any element of fraud, the detention would amount in law to a fraud on the rights of those to whom such moneys belonged. (Bull v. United States (US), supra.) The North Dakota Legislature, recognizing the fact that errors would be made whereby payments would be exacted and received in excess of that which was legally owing, took pains to provide that where payment of estate tax is made in excess of that which is legally due, and as a result money is paid into the treasury to which the state and county are not entitled and which they have no right to exact, they will be required to return the same to the person who has made payment and restore it to whom it rightly belongs. The Legislature said:

*"In case an overpayment of such tax has been made, such overpayment shall be repaid* out of any estate tax funds in the hands of the county treasurer upon an Order of the Court approved by the State Tax Commissioner."

The lawmakers held out an inducement to the taxpayer to make payment with the assurance that if an error were made in applying the rule of the statute to the facts in his case, or if for any other reason an overpayment were made, he would be entitled upon so showing to have the overpayment refunded. The state renounced any advantage resulting from payment to it of moneys in excess of that to which it was lawfully entitled, "and set up a new standard of equity and conscience. A fine sense of

honor had brought the statute into being. We are to read it in a kindred spirit." George Moore Ice Cream Co. v. Rose, 289 US 373, 379, 77 L ed 1265, 1270, 53 S Ct 620.

Where timely application is made and it is shown there was an overpayment, the county court is vested with the power and it is charged with the duty to order repayment of the overpayment. Upon the approval of the order by the State Tax Commissioner, the order for repayment becomes a fully audited and approved claim, and it becomes the duty of the county treasurer upon such approved order being filed with him to make repayment in the manner provided by the statute. The State Tax Commissioner, however, has no power to nullify or set aside the action of the county court. He is not vested with appellate powers over orders for repayment. The State Tax Commissioner's authority is limited to approval or disapproval. If he approves, the claim becomes subject to payment without further action. If he refuses to approve, then the claim is not payable in the summary manner that is provided in the Estate Tax Act and it will become necessary, as it has in this case, for the applicant to enforce his right in a court of competent jurisdiction.

Appellants next contend that the payment made by plaintiff on February 14, 1941 was a voluntary payment and that consequently, plaintiff is not entitled to recover. It is unnecessary to determine whether the payment made by the plaintiff executor, as required by the order of the county court, was or was not a voluntary payment within the legal significance of that term. As said, the Legislature extended an inducement to persons who would be required to pay estate taxes to make prompt payment, and it gave a definite promise that if for any reason an overpayment were made, such overpayment would be refunded upon timely application to the county court and showing that an overpayment had been made. The statute "does not condition the right to refundment which it creates and implements upon the fact either of payment under protest or compulsion." (Re Monfort, 193 Minn 594, 597, 259 NW 554, 555, 98 ALR 280, 283.) The sole basis of the right to payment of a claim for a refund is that it be shown that an overpayment of the legal tax has been

made. There is certainly nothing in the Estate Tax Act to indicate that the Legislature intended to reward a taxpayer who embarrassed the government and its officers by failing or refusing to pay the tax until compelled to do so by legal process over a taxpayer who makes payment promptly and voluntarily in reliance upon the fact that if later he should find, and be able to show to the court, that the amount demanded and which he paid was in excess of that legally due, he would, upon timely application and proof of the fact that the payment exacted was in excess of the amount actually and legally due, be repaid the amount of such excess. The whole tenor of the statute is to the contrary. As has been pointed out, the Act provided a simple and easy method for the presentation and allowance of a claim for an overpayment. Subsequent to its enactment, the people of the state recognized the propriety and validity of claims for refunds for overpayment of the estate taxes, and by amendment to the Constitution specifically appropriated the necessary funds required for the payment of valid claims against the state for refunds under the Estate Tax Law. (ND Const, § 186 as amended by amendment adopted at election held June 28, 1938.) This constitutional appropriation was but a recognition that valid claims for a refund are just demands against the state which should be paid promptly and without any delay that might result from a want of adequate appropriations for that purpose.

The judgment appealed from is affirmed.

BURR, NUESSLE, BURKE and MORRIS, JJ., concur.