No. 17,648.

State of Colorado, et al. *v.* James Quigg Newton, Jr.,
Trustee.

(300 P. [2d] 527)

Decided July 9, 1956.   Rehearing denied July 30, 1956.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank
E. Hickey, Deputy, Mr. Neil Tasher, Assistant and In-

heritance Tax Commissioner, Mr. FLOYD B. ENGEMAN, Assistant, for plaintiffs in error.

Mr. HOWARD W. REA, Mr. RICHARD M. DAVIS, Mr. DONALD S. STUBBS, Mr. BYRON R. WHITE, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is an action to recover a so-called estate "gap tax" allegedly erroneously paid to the State of Colorado by the estate of James Quigg Newton, deceased. We shall refer to the parties as they appeared in the trial court.

On March 19, 1954, plaintiff filed his complaint in the County Court of the City and County of Denver alleging among other matters that the action was to secure a refund under Section 43 of Chapter 85 of 1935 C.S.A. as amended (C.R.S. '53, 138-4-41) "for the recovery of 'gap tax' (the tax imposed under Section 33 (1-8) of Chapter 85, 1935 C.S.A.) *erroneously* paid to the Department of Revenue." (Emphasis added.)

The record discloses that James Quigg Newton died April 5, 1944, a resident of Denver, Colorado, and that his estate was there probated and closed on or about September 26, 1950. Prior to March, 1947, the estate paid a Federal Estate Tax which included a gross basic Federal Estate Tax, determined under Section 810 of the Internal Revenue Code, of $19,529.21, against which certain credits were given for state inheritance taxes. Section 813 (b) of the Internal Revenue Code allows a credit against the tax imposed by said Section 810, up to 80% of said tax, for any estate, inheritance, legacy or succession taxes actually paid to any state. The maximum credit here so computed was $15,623.37. Various

Colorado and California inheritance taxes were paid qualifying for credit under said Section 813 (b). These state inheritance taxes together did not utilize $6,092.18 of the maximum 80% credit allowable against the above $19,529.21.

Section 33 (1-8) of Article 4, Chapter 85, 1935 C.S.A. as amended (C.R.S. '53, 138-4-24 to 138-4-31) entitled "ADDITIONAL TAX TO TAKE ADVANTAGE OF CREDIT ALLOWED ON FEDERAL ESTATE TAX" imposes the so-called "gap tax" which is equal to the difference between the maximum 80% credit under Section 813 (b) Internal Revenue Code and the total credit allowable, without reference to Section 33 (1-8), for actual state death taxes otherwise paid.

Newton's estate paid the sum of $6,092.18 as above computed to the Colorado Department of Revenue on March 24, 1948, after official notice given March 10, 1948.

Newton's gross basic federal estate tax was computed on an estate which included certain transfers in trust during decedent's lifetime.

On October 25, 1949, Sec. 7, P. L. 378, 81st Congress was passed as the Technical Changes Act of 1949, it was amended by P. L. 761, 81st Congress on September 6, 1950. The net effect of these laws was that Sec. 811 (c) Internal Revenue Code was amended with *retroactive effect* to overcome certain judicial decisions and to provide that certain transfers of property made on or before October 7, 1949, (like the Newton trust *inter vivos* transfers) should not be included in the gross estate. Refunds were authorized and the Newton estate filed for such on October 20, 1950. In October 1951 the United States granted this refund in the amount of $59,434.02. This reduced the gross Basic Federal Estate Tax to $10,647.48 with a maximum allowable 80% credit of $8,517.98. Total inheritance taxes allowable as credits under Section 813 (b) Internal Revenue Code (without reference to the 80% limitation), exclusive of additional

tax under Sec. 33 (2) of Ch. 85, were thus more, and not less, than the maximum 80% credit as finally determined, which would be unused or unapplied without the application of Sec. 33 (1-8), Ch. 85. Thus there was no "gap tax" *after* the federal law was corrected and amended.

Plaintiff's complaint thus claims there is no "gap tax" due the State of Colorado and that "the aforesaid sum of $6,092.18 was *erroneously paid* to the Department of Revenue." (Emphasis added.) The pleadings then admit the payment of the tax and that administrative procedures to secure a refund were exhausted. Plaintiff prays for a judgment of $6,092.18, interest, and an order directing the Inheritance Tax Commissioner, the Attorney General and the State Treasurer to effect a refund *"as required by law and in compliance with Sec. 43 of Ch. 85 of 1935 C.S.A., as amended,* together with such other and further relief as may be just in the premises." (Emphasis added.) Defendants' answer makes certain admissions and denials and affirmatively asserts several defenses, two of the latter are important here, viz: Defendants' first defense alleging that the complaint fails to state a claim against the defendants upon which relief can be granted; and defendants' fourth defense which alleges the tax was paid voluntarily, that Sec. 43, Ch. 85, '35 C.S.A. as amended is not here applicable; and that there is no statutory authority for such a refund or repayment to plaintiff of the sums paid. Certain matters changing some amounts and dates are set forth in the written pretrial order which are not material to our decision; however, that order also lists cogently the principal legal issues as seen by the parties.

On January 17, 1955, the County Court, after a contested hearing, entered its "Findings of Fact and Conclusions of Law and Decree." That excellent summary sets forth in detail (with certain changes in dates and amounts) the various facts involved and states that the executor paid the "gap tax" to the State of Colorado

because of a "factual misapprehension" because unable to actually determine the then federal estate tax which he did not then accept as final. The trial court then in his thirty-fourth finding ruled that the "sum of $6,092.18 was paid by plaintiff to the Department of Revenue erroneously and in error and through excusable mistake." The trial court then found that all administrative procedures had been complied with and that laches does not bar plaintiff; further that references to Art. 4, Ch. 85, '35 C.S.A. should refer to Sec. 2, Ch. 146, S.L. 1941; and that no "gap tax" is imposed by law under the final computations. He then found that the tax had been erroneously paid under Sec. 43, Ch. 85, '35 C.S.A. as amended entitling plaintiff to a refund under Sec. 33 (2) Ch. 85, '35 C.S.A. as amended (C.R.S. '53, 138-4-25) and that no statute of limitations is applicable. Many other findings are made which are not pertinent to our decision. The learned briefs of both parties in detailing the history of the Colorado Statutes in this matter is commendable.

Motion for a new trial was dispensed with and the parties are now before this Court on writ of error. No reporter's transcript is before us because the designation therefor was stricken as not having been filed in due time and there being no showing of excusable neglect; however, it is not necessary to a decision in this case.

### QUESTION TO BE DETERMINED.

*Was the voluntary payment of a "gap tax" to the State of Colorado, after receipt of notice to pay same from the state, such an erroneous payment of the tax, under the facts herein presented and under applicable Colorado statutes, as to permit or require a refund or recovery upon proper claim?*

▮ This question is answered in the negative. Colorado has no statute which expressly permits such a refund. To recover plaintiff must show he comes within the meaning of Sec. 43, Ch. 85, '35 C.S.A. as amended (C.R.S., '53, 138-4-41). The fact that plaintiff here did

not pay until notified to do so, or paid by mistake, or by what proved to have been a mistake, or paid under a factual misrepresentation, makes no difference. Said Sec. 43 reads in part: "When any amount of said tax *has been paid erroneously* * * *, it shall be lawful * * *" to refund it. (Emphasis added.) Clearly Newton's tax was not "paid erroneously" at the time it was paid.

■ The record shows that there was no error or mistake in the tax payment at the time it was made by plaintiff. He paid the very tax and the amount of tax that he intended to pay; nor was there any protest at time of payment, or error in the demand for payment, or in noting the payment or in issuing the receipt. The term "paid erroneously" is clearly intended to cover cases where payment was made under a misapprehension as to what was being paid. A tax intentionally and understandingly paid, although the assessment was made or the tax levied incorrectly, is not erroneously paid. *Security Nat. Bank v. Twinde, et al., County Com'rs.,* 52 S. D. 352, 217 N. W. 542, cited with approval in *Pittsburgh Coal Co. v. School District of Forward Tp.,* (Pa. 1951), 366 Pa. 489, 78 A 2d 253 and in *Shea v. State Tax Commission,* 101 Utah 209, 120 P. (2d) 274.

■ Because there is no Colorado statute permitting recovery under the circumstances shown, a second compelling reason exists as to why plaintiff cannot prevail. We hold it to be against the public policy of the State of Colorado to permit a retroactive enactment of the Federal Congress, or any other legislative body, except the General Assembly of the State of Colorado, to provide for refund of a tax properly and lawfully assessed and paid under a valid law of this state. To hold otherwise would open a Pandora's Box of uncertainty and trouble for public officials charged with collecting and distributing tax moneys for the operation of the state government. No budgets or receipts could be planned if it be held that a retroactive statute could be adopted after a lapse of years which would require or permit refunds

of taxes long since lawfully and voluntarily paid and expended in the operation of the government. We refrain from commenting on the question of whether the legislature could constitutionally enact such a statute as would be necessary to effect a refund of the taxes paid until that question is properly before us.

The judgment must be, and is, reversed and the cause remanded with directions to dismiss the complaint as failing to state· a cause of action upon which relief can be granted.

MR. JUSTICE BRADFIELD dissenting.