No. 20495.

THE NATIONAL STATE BANK OF BOULDER, AS EXECUTOR OF THE ESTATE OF THEO G. LASHLEY, DECEASED, *v.* STATE OF COLORADO, ET AL.
(396 P.2d 948)

Decided November 23, 1964.    Rehearing denied December 21, 1964.

HUTCHINSON & HUTCHINSON, STANLEY A. BLACK, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, R. ROBERT IRWIN, JR., Assistant, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THIS is an action for refund of Colorado inheritance taxes.

Plaintiff in error was the executor of the estate of Theo G. Lashley, and we will refer to it as the Bank. When it is deemed necessary to refer specifically to the various defendants in error—all officials of the State of Colorado—we will refer to them by their respective titles in office.

A chronological listing of the various proceedings in the estate of Theo G. Lashley should make for a clearer understanding of the basis of the claim of the Bank for a return of a portion of the inheritance taxes allegedly erroneously paid.

Theo G. Lashley died testate October 19, 1958. By will admitted to probate he created two trusts—a marital deduction trust and a residual trust. The marital

trust gave his widow a life estate, a general testamentary power of appointment, and the power to draw upon the corpus of the trust not to exceed $5000.00 in any one year. The residuary trust gave his widow a life estate therein, but with discretionary power in the trustee to use the corpus without limitation for the benefit of the widow. The remaindermen, under the residuary trust, were the testator's children and the "heirs of his (her) body," respectively. Upon the widow's failure to make a will naming other persons as beneficiaries under the testamentary power of appointment given to her, the same remaindermen were to receive the unexpended corpus of the marital trust.

On January 21, 1959, the executor filed an inheritance tax application and listed Ivy P. Lashley, the widow, as the *sole distributee* of the property of Theo G. Lashley. The application valued the property thus to be distributed in the sum of $287,196.84. A preliminary computation of the tax due was made, and on April 27, 1959, a temporary payment of $16,516.33 was made to the State of Colorado. On May 19, 1959, Ivy P. Lashley died. It is undisputed that at the time of her death she had received the sum of $43,769.86 from the estate of Theo Lashley.

Nine days after Mrs. Lashley's death—May 28, 1959— the statement of the final amount due on the inheritance tax in the estate of Theo G. Lashley was mailed to the Bank, and on June 2, 1959, the final tax payment was made to the Inheritance Tax Division. On November 15, 1959, the Inheritance Tax Division assessment report was filed in the County Court of Boulder County, Colorado. On October 25, 1960, the Bank made application to the Inheritance Tax Division for refund of a portion of the inheritance tax paid in the Theo Lashley estate. This application was denied on March 29, 1961, and on August 22, 1961, an action was filed in the County Court against the State of Colorado for the refund of an alleged "erroneous payment" of $13,919.30. The re-

fund was claimed pursuant to C.R.S. '53, 138-4-41. The amount of the refund is predicated upon C.R.S. '53, 138-4-23, which reads as follows:

"Tax on life estates and remainders.—When an interest based upon lives in being is terminated by death of the persons upon whose lives it is based and the tax upon the transfer thereof has not been fixed and determined, the value of said interest for the purpose of taxation under this article shall be the amount actually paid or payable to the beneficiary and the value of the remainder shall be the difference between the value of the interest as so determined and the value of the property involved."

The above facts are not in dispute. On presentation thereof to the County Court, and after argument, the court held that the claim was barred by the provisions of C.R.S. '53, 138-4-46, the pertinent portions of which provide:

"Appraisal and assessment.—It shall be the duty of the inheritance tax commissioner to appraise the estate of every deceased person at its fair market value, * * * and upon such determination the inheritance tax commissioner, with the approval of the attorney general, shall compute and assess the tax or fee to which the estate or transferees are liable, and immediately shall give notice by mail to the executor, administrator, trustee, or person filing the application, and file in the court, if any, under whose jurisdiction the estate is undergoing administration, a report of the appraisement of the estate and the assessment of the tax. Any person including the attorney general, dissatisfied with the assessment made or tax fixed may object thereto, either upon the ground of erroneous valuation, appraisement or assessment, or otherwise, by a written objection filed in the county court *within ninety days* after the filing of the report of assessment. * * * If no objections are filed or if objections filed are overruled by the court

and no appeal is taken from such ruling, then said *assessment order shall have the force and effect of a judgment, as in other cases provided,* and execution may issue thereon to enforce the same by sale of the said property to satisfy said judgment. * * *" (Emphasis supplied.)

The trial court found that the assessment was filed on November 15, 1959, and that no objection was filed in the County Court within the ninety days after the filing of the assessment as provided by statute. To the court order denying the claim of the executor, this writ of error is directed.

█ We hold that the judgment of the trial court was correct. The assessment though made on information previously submitted by the Bank, was filed in the County Court many months after the death of Mrs. Lashley; and all of the facts concerning the amount that had actually been transferred to her from the corpus of the trust were known at the time of the assessment. Under the plain meaning of the provisions of C.R.S. '53, 138-4-46, to which this court must give effect, the assessment, when filed, has the force and effect of a judgment, and failure to move to object to it within the ninety day statutory period or to appeal from an adverse determination makes the judgment final. See *In Re Dixon's Estate,* 7 Pa. District and County Reports 381; *In Re Heberton's Estate,* 351 Pa. 564, 41 A.2d 654; *In Re Darsie's Estate,* 354 Pa. 540, 47 A.2d 815; *In Re Schweitzer's Estate,* 81 Idaho 165, 338 P.2d 267.

Faced with the interpretation of a comparable statute, the Pennsylvania Supreme Court, in the *Heberton* case, supra, in dealing with an attempt by the State of Pennsylvania to obtain additional taxes, said:

" '* * * After the expiration of the time for appeal, the question was not an open one and the appraisal was conclusive on all parties. * * * The only remedy for an erroneous exercise of judgment by the appraiser is an

appeal. A second appraisement to revise the judgment of the appraiser is without authority of law.'

\* \* \*

"\* \* \* the assessment is final and conclusive on both the taxpayer and the Commonwealth and cannot be challenged except by an appeal."

We, in Colorado, have thus far not had occasion to rule on this question. But in other jurisdictions, under statutes similar to the Colorado statute, the courts have held that the relief, such as sought here by the Bank, is purely statutory, and that the statutes must be strictly followed. In the cases cited by the Bank in its brief in support of its contentions, the decisions were predicated on statutes that provide for refund procedures which Colorado does not have; and in those states the assessment is not given the force and effect of a final judgment. For example, in *Boe v. Steele County,* 74 N.D. 58, 19 N.W.2d 921, the court said that it could not *read into* the North Dakota statutes the legislative *intent* that the order making the assessment should become final and conclusive. On the other hand, in Colorado the legislature has expressly stated that the filing of the assessment "shall have the force and effect of a judgment."

The Bank asserts that C.R.S. '53, 138-4-41, affords relief in that this was a tax "erroneously paid." This particular statute was interpreted by this court in *State v. Newton,* 134 Colo. 58, 300 P.2d 527, and the holding therein is contrary to the position taken by the Bank. Clearly, it supports the finding and judgment of the trial court herein. In the Newton case, supra, we said, at page 63:

"\* \* \* The term 'paid erroneously' is clearly intended to cover cases where payment was made under a misapprehension as to what was being paid. A tax intentionally and understandingly paid, *although the assessment was made or the tax levied incorrectly, is not erroneously paid."* (Emphasis supplied.)

In the case at bar, the tax was knowingly paid pursuant to an assessment order which—as we have said—became final and conclusive. Accordingly, this cannot be construed as an "erroneous payment." As was said by the California Supreme Court *In Re Brown's Estate,* 196 Cal. 114, 236 Pac. 144, 147:

"If meaning is to be given to section 18 of the act (Stats. 1917, p. 900; Stats. 1921, p. 1520), which provides that an order fixing tax is to have the effect of a judgment in a civil action it would follow that if any such order has fixed an erroneous amount it would have to be in some manner modified or reversed before a refund of any portion of the tax paid thereunder could be accomplished, for the order otherwise would have the effect of a final judgment in a civil action. Appellants have offered no suggestion as to what disposition would be made of the unmodified or unreversed order, which has ripened into a final judgment. * * *'"

California statutes provide an alternative remedy not given in Colorado. This was considered by the California Supreme Court in the Brown case. But on the point in issue here, Colorado and California have the same rationale, namely, that "erroneously paid" is not the same as "determination of an amount that is erroneous."

In C.R.S. '53, 138-4-41, a provision for reassessment procedure is expressly limited to "whenever additional claims, taxes or additional costs of administration which are valid deductions have been proved and allowed subsequent to the appraisement, assessment and payment of the tax. * * *'" Under the principle *expressio unius est exclusio alterius,* other grounds for reassessment must be excluded from consideration under the Act.

The judgment is affirmed.

Mr. Chief Justice McWilliams and Mr. Justice Pringle concur.