IN RE ESTATE OF WARTENHORST, et al., Appellant
v.
STATE, et al., Respondents

(211 N.W.2d 705)

(File No. 11063. Opinion filed October 31, 1973)

Claude A. Hamilton, Blaine Simons, Sioux Falls, for plaintiff and appellant.

Gordon Mydland, Atty. Gen., John Dewell, Asst. Atty. Gen., Pierre, for defendants and respondents.

WINANS, Justice (on reassignment).

The executor of the estate of Peter Wartenhorst, deceased, instituted this proceeding to obtain a refund of state inheritance taxes alleged by him to have been erroneously paid.

The facts have been stipulated and, in brief, are as follows: On or about September 11, 1970 an inheritance tax report and inventory in the matter of the estate of Peter Wartenhorst was filed with the South Dakota Department of Revenue and on September 15, 1970 the State of South Dakota entered into a stipulation with the estate as to the amount of inheritance tax due, based upon the valuation of the estate and claims as shown in the report. The stipulation was on October 6, 1970 approved by the court and payment of the tax was made on the same day.

On December 11, 1970 a proof of claim against the estate in the amount of $10,550.82 was presented to the court and allowed in the amount of $6,000. This claim was unknown to the executor at the time the stipulation was entered into and was not taken into account in the determination of the inheritance tax. On June 16, 1971 the executor of the estate made application to the Department of Revenue for a refund of $720 which was denied on August 31, 1971. The bona fides of the claim filed and allowed is not disputed by the state, nor is it disputed that the claim was timely filed, was unknown to the executor and had not been taken into account in the determination of the inheritance tax.

The settled record further discloses that from an adverse determination disallowing the claim for a refund by the Department of Revenue the estate petitioned for a judicial review by the circuit court and "that upon such review, the said Order of the Department of Revenue be vacated and the petition for refund be

granted." The matter was tried to the court on October 15, 1971 and the trial court made its decision consisting of findings of fact and conclusions of law in favor of the Commissioner of Revenue of the State of South Dakota and judgment was entered on December 1, 1971, reading in pertinent part as follows:

"ORDERED AND ADJUDGED that the Order of the Commissioner of Revenue of the State of South Dakota, dated August 31, 1971, denying to the said Estate of Peter Wartenhorst, deceased, its claim for refund of inheritance taxes paid by it, is hereby affirmed and the application for refund by said estate is hereby denied."

From this judgment the estate appeals.

It is patent from the settled record in this case that the basis for the order denying the refund by the Department of Revenue and for the judgment of the circuit court upon review of such order is the holding in this court in 1928 in the case of Security National Bank v. Twinde, 52 S.D. 352, 217 N.W. 542, and the opinion of the Attorney General of the State of South Dakota found in the 1939-1940 AGR, p. 389. It is our opinion that the facts in Twinde, supra, are distinguishable from the facts here and that the sections of law involved in this court's opinion in Twinde are likewise distinguishable from the sections of law involved in the case at bar. In Twinde the capital stock of the bank was listed as personal property, whereas it should have been listed as moneys and credits. As personal property the capital stock was taxed much higher than it would have been taxed as moneys and credits.

The law with respect to the refunding of real and personal taxes, as distinguished from inheritance taxes, at the time of Twinde is found in Sections 6813 and 6826 of the Code of 1919. Section 6813 of the 1919 Code is the source of SDCL 10-18-1, which provides six different situations, as it does now, where taxes may be abated or the tax, if paid, refunded by the Board of County Commissioners. The fifth reason for abatement or refund is:

"(5) When taxes have been erroneously paid or error made in noting payment or issuing receipt therefor;"

Section 6826 of the Code of 1919, as amended, is the source of SDCL 10-27-2 and is generally referred to as the protest statute.

The bank sought to have a refund of the difference, claiming it erroneously paid the higher tax. The court in Twinde said:

"Was the tax 'erroneously paid' so as to be recoverable under the provisions of subdivision 5? It seems clear that the words 'erroneously paid' as here used cannot be applied to the payment of any tax which for *any* reason is invalid, as is contended by plaintiff. To give that meaning to these words would render superfluous all the other five subdivisions of the section. So construed, taxes would be erroneously paid when the property was exempt from taxation or if the complainant was not the owner of the property, and in fact would be erroneously paid in this sense when paid in any situation presented in all of the six subdivisions of the section. We cannot ascribe to the Legislature the sedulous ineptitude implied in the supposition that it painstakingly enumerated in six separate subdivisions the specific situations in which a refund might be had if the plain language of one of the shortest of the subdivisions covered every situation enumerated in all the others.

We think the word 'erroneously,' as used in subdivision 5 of section 6813, must be taken in its ordinary sense of 'mistakenly.' There was no error or mistake in the payment made by the plaintiff. It paid the very tax and the amount of tax that it intended to pay; nor was there any error in noting the payment or in issuing the receipt. In our view, the words 'erroneously paid' were clearly intended to cover cases where payment was made under a misapprehension as to what was being paid. But a tax intentionally and understandingly paid, although the assessment was made or the tax levied in-

correctly, is not erroneously paid, and we do not think that section 6813 was designed to allow a refund of taxes in such a situation."

Twinde, supra, is one of those cases that must necessarily be limited in application to the fact situation with which it deals. The court there was concerned with the payment of ordinary taxes as we usually understand the term "taxes". It was not writing law on inheritance taxes. That this is too plain to admit of any doubt is established because the court further wrote in Twinde that Sections 6813 and 6826, Code of 1919, "remains the only remedy for the recovery of taxes paid." Section 6855, Code of 1919, was the law when Twinde was before the court and it provided, as its counterpart SDCL 10-41-83 does today, a remedy for recovery of inheritance taxes erroneously paid. SDCL 10-41-83 does not contain six different situations where the tax may be refunded and the words "erroneously paid, wholly or in part" contained in this section are not boxed in and strictly and severely limited because of five other subdivisions of the same section, as they were in Twinde, supra. The court did not define the word "erroneously" standing alone. We write on a clean slate here.

The laws relating to the imposition and the amount of inheritance taxes and the administration and collection of them are found in SDCL 10-40 and 10-41. It is provided in SDCL 10-40-26, in pertinent part, that "The tax imposed by this chapter shall be computed upon the true and full market value in money of such property less any indebtedness, and expenses of administration, chargeable against such property, * * *." In our case we are concerned with an indebtedness which would reduce the value of the estate on which the computation of the tax would be made. SDCL 10-41-32 provides as follows:

> "The department of revenue shall have power to stipulate as to the value of any property where the estate is being probated, and any such stipulation when approved by the court shall be of the same force and effect as a decree to the same effect made by the court."

The stipulation as to the facts shows that this was done. SDCL 10-41-34 provides as follows:

> "Unless an appeal is taken, the determination of the county court upon the amount of tax due shall be final as to all property described in the report or the findings of the court, except as provided in §§ 10-40-16 to 10-40-18, inclusive, but a new appraisement may be had in the county court at any time upon the discovery of further assets of the estate."

The sections excluded by exception relate to contingent and conditional transfers taxed at the highest possible rate and are not applicable to our situation. The appeal statute is SDCL 10-41-36 and such section provides that the appeal shall be taken within 30 days from the entry of the decree of the county court. In this case the time for appeal expired within 30 days from October 6, 1970 when the court entered its order determining the amount of the tax due. The case does not reach us by an appeal from the order, but by reason of SDCL 10-41-83 which reads as follows:

> "When any inheritance tax imposed by this chapter and chapter 10-40 shall have been erroneously paid, wholly or in part, the person paying the same shall be entitled to a refund of the amount so erroneously paid, and the department of revenue, upon satisfactory proof of the fact, shall approve a voucher for a refund of the portion of such tax received by the state, upon which the state auditor shall draw a warrant upon the state treasury for the amount thereof in favor of the person entitled thereto. Upon a refund being made by the state of any such tax, it shall be the duty of the county commissioners to repay to the claimant from the general fund of the county the portion of such tax retained by the county, upon a claim being presented therefor."

It is plain that the refund statute cited above has no application until and after the tax has been determined and paid.

It is provided by law that "Within thirty days after the appointment and qualification of an executor or administrator he shall make and return under oath to the clerk of the court issuing to him his letters" his inheritance tax report showing among other

things the inventory of the property, valuation, and other information. SDCL 10-41-17. Where the estate is complicated, the county court may extend the time for filing. SDCL 10-41-20. At that point the administrator or executor usually does not know what claims, if any, will be filed. It appears clear in this case that when the executor filed his inheritance tax report, he was not aware of the claim later filed in the amount of $10,550.82 and allowed in the sum of $6,000. He paid the tax before the claim was filed, which claim was filed within the four months period allowed. The executor was uninformed, the amount of the tax paid was based on misinformation, and paid willingly.

The state of North Dakota had before it in the case of Boe v. Steele County, 1945, 74 N.D. 58, 19 N.W.2d 921, the question of whether the order of the county court fixing the amount of estate tax and assessing the same was res judicata on the amount of the estate tax legally assessable against the estate so as to preclude a refund of overpayments in cases where overpayment has been made. In Boe, supra, the court quoted their statute which provided, " 'All assessments shall be made upon appraisals of the full and fair cash value of the property to be transferred as of the date of the death of the decedent.' " In Boe it was the appellant's contention "that the order made by the county court on October 29, 1940, assessing the estate tax is res judicata of all questions relating to the legality and the amount of the estate tax; that such order became final and conclusive when the time for appeal expired; that consequently, the amount of the estate tax legally and actually due was not subject to review or consideration by the county court when it made its order dated January 6, 1943, ordering a refund of an overpayment; and that any question as to the amount of the estate tax and whether there had been an overpayment is not subject for review by the courts at all." Answering this contention, the North Dakota court said,

"Assuming, without deciding, that such order was subject to appeal, we are agreed that the failure to appeal does not bar the right to a refund for an overpayment. If an order assessing the estate tax is subject to appeal, then under any of the statutory provisions relating to appeal, the appeal must be taken within thirty (30)

days. If the order of the county court making the assessment has the effect of establishing finally and conclusively that the amount of the assessment is the amount of tax legally and actually due and payable so that the taxpayer cannot be heard to say after the time for appeal has expired, on an application for a refund of overpayment, that the amount assessed, which he has paid, was in excess of that legally owing for such tax, then obviously the order is equally final and conclusive in this respect after the expiration of the period for appeal whether the estate tax has or has not been paid. The provisions of the statute relating to a refund for an overpayment come into operation only after payment has been made. The statute presupposes not only that an assessment has been made, but also that the assessment has been paid and that the amount paid is in excess of that which under the law is legally due for taxes."

The court went on to say:

"The provisions for refundment of overpayment of taxes are inserted in statutes not only as a matter of fairness and justice, but as an inducement to the taxpayer to pay the tax promptly."

Then quoting from a decision of the United States Supreme Court, Bull v. United States, 295 U.S. 247, 259-261, 55 S.Ct. 695, 699, 79 L.Ed. 1421, 1427, 1428,

" 'If that which the sovereign retains was unjustly taken in violation of its own statute, the withholding is wrongful. Restitution is owed the taxpayer. * * * While here the money was taken through mistake without any element of fraud, the unjust detention is immoral and amounts in law to a fraud on the taxpayer's rights.' "

It is also true that the statute of North Dakota provided, as set forth in Boe, "In case an overpayment of such tax has been made, such overpayment shall be repaid out of any estate tax funds * * *." In Boe it was contended that the payment of the tax was a voluntary payment and that consequently there could be no recovery. The court in answer to that said:

"It is unnecessary to determine whether the payment made by the plaintiff executor, as required by the order of the county court, was or was not a voluntary payment within the legal significance of that term. * * * The sole basis of the right to payment of a claim for a refund is that it be shown that an overpayment of the legal tax has been made."

■ Our inheritance tax refund statute is simple and direct. It makes no distinction between taxes paid under compulsion and taxes paid voluntarily. Any tax paid erroneously must be refunded, without restrictions or qualifications. SDCL 10-41-83.

In 42 Am.Jur.2d, Inheritance, Etc., Taxes, § 408, Statutory right to refund, it is stated in part:

"Inheritance and estate tax statutes frequently contain an express provision for refund of taxes paid in certain cases, as where a tax was erroneously paid, or was illegal or excessive, or was wrongfully or illegally exacted or collected; where the taxing order or modification or reversal thereof shows that the amount of tax due is less than the amount paid; where a court of competent jurisdiction determines that property upon which a tax has been paid is not subject to or liable for payment of the tax, or that the amount of the tax paid was excessive; or where debts are proven against an estate after the inheritance taxes have been determined and paid. Such a statute providing for a refund of erroneously paid inheritance taxes is constitutional, and is not subject to the objection that it amounts to an appropriation of public money for a private purpose contrary to the provisions of the state constitution."

■ California is quoted in the same section of American Jurisprudence as authority for the proposition that a statute providing for a refund of inheritance taxes "erroneously paid" refers only to a payment not made in conformity with the order fixing the amount of the tax, and that therefore where the tax paid was the exact amount specified in the taxing order, it was

not "erroneously paid" within the meaning of the statute, even though it was subsequently found there had been overpayment. Kelshaw v. Superior Court in and for San Luis Obispo County, 137 Cal. App. 189, 30 P.2d 432. Whatever may be the holding in California, we cannot interpret our own refunding statute so narrowly and so detrimentally to the taxpayer. A statute which provides for the additional tax on newly discovered assets after the inheritance tax has been paid, as ours does, surely is bound to permit the deduction of newly discovered and approved claims. We are aware that there is a diversity of authority and there must come a time when payment is final; otherwise, we would make the state subject to all kinds of stale claims. That is not the case here, and furthermore, and of great weight with us, we do have applicable to inheritance tax payments the statute of limitations. SDCL 10-41-84 provides: "All applications for such refunding of erroneous taxes shall be made within three years from the payment thereof * * *." We think this statute of limitations is reasonable and protects the state. It is enough.

Judgment reversed.

BIEGELMEIER, C. J., WOLLMAN, J., and HANSON, Retired Justice, concur.

DOYLE, J., dissents.

HANSON, Retired Justice sitting for DUNN, J., disqualified.

DOYLE, Justice (dissenting).

In Security National Bank v. Twinde, 1928, 52 S.D. 352, 217 N.W. 542, this court said:

> "We think the word 'erroneously,' as used in subdivision 5 of section 6813, must be taken in its ordinary sense of 'mistakenly.' There was no error or mistake in the payment made by the plaintiff. It paid the very tax and the amount of tax that it intended to pay; nor was there any error in noting the payment or in issuing the receipt. In our view, the words 'erroneously paid' were

clearly intended to cover cases where payment was made under a misapprehension as to what was being paid. But a tax intentionally and understandingly paid, although the assessment was made or the tax levied incorrectly, is not erroneously paid, and we do not think that section 6813 was designed to allow a refund of taxes in such a situation."

Conceding that Twinde is distinguishable because of the difference in the law between the refunding of real and personal property taxes and inheritance taxes, the interpretation of "erroneously paid" as set forth in Twinde is precisely the same one that other jurisdictions have followed when asked to interpret inheritance tax refund statutes quite similar to ours.

In the case of In re Brown's Estate, 1925, 196 Cal. 114, 236 P. 144, their court construing California's inheritance tax refund statute stated:

"It should be kept in mind that subdivision 4 repeatedly refers to amounts 'erroneously paid'—thus indicating an amount was 'erroneously paid' and not that the determination of the amount was erroneous."

This position was upheld in Kelshaw v. Superior Court In And For San Luis Obispo County, 1934, 137 Cal.App. 189, 30 P.2d 432, wherein the court stated:

"the amount of inheritance tax paid was the exact amount provided for in the order fixing the amount of tax to be paid, the conclusion necessarily follows that there could have been no amount 'erroneously paid' * * *."

Colorado has also applied the Twinde definition in explaining its inheritance tax refund statute. In State v. Newton, 1956, 134 Colo. 58, 300 P.2d 527, the court stated:

"The record shows that there was no error or mistake in the tax payment at the time it was made by plaintiff. He paid the very tax and the amount of tax

that he intended to pay; nor was there any protest at time of payment, or error in the demand for payment, or in noting the payment or in issuing the receipt. The term 'paid erroneously' is clearly intended to cover cases where payment was made under a misapprehension as to what was being paid. A tax intentionally and understandingly paid, although the assessment was made or the tax levied incorrectly, is not erroneously paid. Security Nat. Bank v. Twinde, 52 S.D. 352, 217 N.W. 542, cited with approval in Pittsburgh Coal Co. v. School District of Forward Tp., 1951, 366 Pa. 489, 78 A.2d 253 and in Shea v. State Tax Commission, 101 Utah 209, 120 P.2d 274."

Two more recent Colorado decisions reaffirm this interpretation. National State Bank of Boulder v. State, 1964, 156 Colo. 34, 396 P.2d 948; State v. Matthews, 1971, 29 Colo.App. 143, 480 P.2d 593. According to the latter case, Colorado has amended its statute to read as follows:

" '[2] When any amount of inheritance tax has been incorrectly assessed and paid because of an error of fact or of law made either by the inheritance tax commissioner or by the representative of the estate, the state controller, upon receipt of a certificate of the inheritance tax commissioner, approved by the attorney general, shall refund the amount incorrectly paid * * *.' " Colo.Sess. Laws 1966, Ch. 41, § 1.

In regard to this amendment the court in Matthews stated:

"The effect of this amendment is to allow a refund of an inheritance tax which has been incorrectly assessed and paid because of an error of fact or of law, although such tax could not have been refunded as 'paid erroneously' under the prior statute."

As noted in State v. Newton, supra, two other jurisdictions have followed the Twinde decision in interpreting the term "erroneously paid". Shea v. State Tax Commission, 1941, 101

Utah 209, 120 P.2d 274 (diesel fuel tax included in motor vehicle registration fee); Pittsburgh Coal Co. v. School District of Forward Tp., 1951, 366 Pa. 489, 78 A.2d 253 (school tax).

Moreover, when the same question, as in the instant case, was posed earlier to the South Dakota Attorney General, he concluded:

> "It is my opinion that by applying the same definition to the phrase 'erroneously paid' as used in Section 57.2306, as interpreted by our Supreme Court, that no refund can be had under the circumstances outlined in this letter. It seems to me that the tax in question was intentionally and understandingly paid both in the amount and the nature of the tax, and the failure to deduct an allowable claim and the payment of the tax, based upon the net value of an estate which includes a claim which should have been deducted, does not entitle the estate to a refund of that portion of the tax based upon the amount of the claim which should have been deducted." 1939-40 A.G.R. 389, 391.

True, as the majority opinion points out, the Attorney General's opinion was based upon the Twinde decision. Therefore, by distinguishing Twinde they apparently are able to totally disregard the Attorney General's opinion. As this court stated in Jordan v. Mellette County, 1917, 38 S.D. 299, 161 N.W. 279:

> "We are, however, impressed with the harm that may result from a needless disturbance of an established custom or practice that has arisen, based upon the rulings of the chief law officer of the executive branch of the state government. Such custom or practice should not be disturbed by this court, except when clearly unsupported by law, and then only when the issues presented require an opinion having such effect."

Realizing no absolute compulsion, I, however, believe it proper in this instance to concur in the opinion of the Attorney General to

avoid unsettling administrative practices of long standing absent a stronger basis than shown by the majority to rule otherwise. State v. Esmay, 1948, 72 S.D. 270, 33 N.W.2d 280.

Furthermore, I believe the majority inappropriately relies on the case of Boe v. Steele County, 1945, 74 N.D. 58, 19 N.W.2d 921. The North Dakota statute involved, in applicable part, is as follows:

> " '* * * In case an overpayment of such tax has been made, *such overpayment* shall be repaid out of any estate tax funds in the hands of the county treasurer upon an Order of the Court approved by the State Tax Commissioner. A certified copy of such order shall be filed with the State Treasurer and he shall credit the account with the amount of the state's proportionate liability on such refund. In any case where the State Treasurer has collected the entire inheritance tax, refunds may be made upon approval of the State Tax Commissioner in the same manner as other claims against the state are paid.' " Laws 1927., Ch. 267, Sec. 9, N.D.R.C. 1943, 57-3724. (emphasis added)

It is patent the question of whether the inheritance tax paid in that case was "erroneously paid" was not before the court. As the court itself stated:

> "* * * The sole basis of the right to payment of a claim for a refund is that it be shown that an *overpayment* of the legal tax has been made." (emphasis added)

It is noted that SDCL 10-41-83 is entitled *"Refund of erroneous or overpayment—Voucher and warrant—Refund of county portion."* However, under our rules of statutory construction, source notes, cross-references and titles do not constitute part of the statute and, consequently, are no basis for forming an interpretation thereof. SDCL 2-14-9.

The majority also cites the Boe decision for the proposition that the assessment of an inheritance tax is not to be given the

force and effect of a final judgment. This may be the law in North Dakota but, in my opinion, it is not the statutory or case law in South Dakota.

SDCL 10-41-32 provides:

"The department of revenue shall have power to stipulate as to the value of any property where the estate is being probated, and any such stipulation when approved by the court shall be of the same force and effect as a decree to the same effect made by the court."

SDCL 10-41-34 further provides:

"Unless an appeal is taken, the determination of the county court upon the amount of tax due shall be final as to all property described in the report or the findings of the court, except as provided in §§ 10-40-16 to 10-40-18, inclusive, but a new appraisement may be had in the county court at any time upon the discovery of further assets of the estate."

Also in the recent case of In re Estate of Grimes, 1973, 87 S.D. 187, 204 N.W.2d 812, Chief Justice Biegelmeier, with all the justices concurring, stated:

"* * * A decree, even though erroneous, is final and conclusive and binding on the heirs—not only as to claims they made but also as to claims they could have made. White v. White, 76 S.D. 503, 81 N.W.2d 606."

I believe that this language is applicable, although the cases are factually distinguishable, to the one at bar unless "a decree is not always a decree."

Other jurisdictions have also been confronted with this question. In the previously cited case of In re Brown's Estate, supra, the California court stated:

"If meaning is to be given to section 18 of the act (Stats.1917, p. 900; Stats. 1921, p. 1520), which pro-

vides that an order fixing tax is to have the effect of a judgment in a civil action it would follow that if any such order has fixed an erroneous amount it would have to be in some manner modified or reversed before a refund of any portion of the tax paid thereunder could be accomplished, for the order otherwise would have the effect of a final judgment in a civil action."

Colorado also noted this question in National State Bank of Boulder v. State, supra.

The answer, I believe, is found in SDCL 15-6-60(b), which provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under § 15-6-59(b);

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. Section 15-6-60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court."

The record indicates that the appellant attempted to have the original decree corrected.* Using the proper procedure, it is my opinion that this is the correct approach to this situation in the face of the present wording of our statute.

In the present case the executor must be charged with knowledge that the time for filing claims had not expired and that additional claims might be filed when he made his report and had the tax liability determined. He stipulated as to the amount of the tax and paid it. He paid the amount he intended to pay. The tax was not "erroneously paid".

The majority reaches a highly desirable result, but in seeking fairness and justice they trample over much-settled law. I believe an equitable and proper result can also be achieved without taking such a route and, therefore, I must respectfully dissent.

---

* The record is not complete in this matter. However, in an Order dated September 2, 1971, the circuit court judge ordered:
"that Order of the District County Court made and entered on January 6, 1971 correcting the amount of Inheritance Tax due on the above estate be and the same is hereby vacated." The Department of Revenue had appealed the above-mentioned District County Court order. In a memorandum opinion the circuit court judge held "that the District County Court had no jurisdiction to make the order." It appears the order was issued ex parte without notice of hearing to the Department of Revenue.